366 So.2d 848 (1979)
L.S. HARTZOG, Appellant,
v.
James E. DIXON and Evelyn F. Dixon, His Wife, and Bache, Halsey, Stuart, Inc., Appellees.
No. JJ-169.
District Court of Appeal of Florida, First District.
January 30, 1979.
James E. Miller, Jere D. McWinn, Raymond E. Makowski, Jacksonville, for appellant.
*849 Raymond E. Watson, of Webb, Swain & Watson, Charles P. Pillans, III, of Bedell, Bedell, Dittmar & Zehmer, Jacksonville, for appellees.
ERVIN, Acting Chief Judge.
Hartzog appeals the entry of partial summary judgment which held the Dixons had the right to possession of 100 shares of stock free from any interest of Hartzog.
A summary of the pertinent pleadings and affidavits reveals the following: The Dixons filed an action in conversion seeking damages against Bache, a registered stockbroker, alleging that Bache, acting as the Dixons' agent, purchased on their behalf 100 shares of Wendy's International, Inc., and that after the Dixons had paid for the stock, they were informed in October or November, 1976, that Bache had wrongfully delivered the stock to some other person. Bache answered, stating that at the time the Dixons made demand upon it for delivery of the 100 shares, it informed the Dixons that the stock had been delivered to James E. Miller, attorney on behalf of Hartzog, pursuant to an agreement between the Dixons and Hartzog which sought to reach a settlement of a dispute between them regarding an entitlement to the stock. It alleged also that the Dixons, through their conduct, ratified the delivery of the stock to Hartzog's agent. In the same pleading, Bache sought to interplead the interests of Hartzog and Dixon to the stock by alleging that Hartzog loaned to Dixon the money to purchase the stock, with the intent that the anticipated profits from the sale of the stock would be a bonus to James E. Dixon, an employee in Hartzog's business.
The court never ruled upon the propriety of the interpleader action.[1] Hartzog admitted the allegations stated in Bache's interpleader counterclaim and filed also a cross-claim against Dixon on a promissory note dated November 15, 1976, which, Hartzog alleged, Dixon never repaid. The Dixons responded by filing motions to dismiss Hartzog's cross-claim and for summary judgment. The latter motion was supported by an affidavit of James Dixon which stated that "no written agreement" of any kind ever existed giving anyone an interest in the stock, including Hartzog and his representatives. The attorney for Hartzog filed an opposing affidavit alleging that Hartzog claimed an interest in the stock resulting from a loan of $5,000 to James Dixon in order to enable him to purchase the stock. Attached to the affidavit was a copy of a check made payable to James Dixon, dated June 23, 1976, in the amount of $5,000 from Hartzog as evidence of the loan. Also attached was a customer confirmation slip with the trade date of June 23, 1976, representing that the Dixons had purchased 100 shares of Wendy's International, Inc. in the total sum of $4,980.40. The court on January 16, 1978, entered two orders: (1) granting Dixon's motion to dismiss the cross-claim of Hartzog without prejudice to Hartzog to file an amended cross-claim, and (2) granting partial summary final judgment holding that the Dixons had the right to possess the stock free from any interest of either Bache or Hartzog.
We conclude that the pleadings and affidavits on file raise a genuine issue of material fact as to Hartzog's entitlement to the stock, thus precluding summary judgment in the Dixons' favor. The primary issue is whether Hartzog established a security interest in the stock. A security interest is broadly defined as "an interest in personal property ... which secures payment or performance of an obligation... . The term also includes any interest of a buyer of accounts, chattel paper, or contract rights which is subject to Chapter 679." Section 671.201(37), Fla. Stat. (1975). The three requisites to the existence of a security interest are (1) an agreement, (2) the giving of value and (3) the debtor's *850 rights in the collateral. See Uniform Commercial Code comment to § 679.204. Genuine issues of material fact remain unresolved as to the question whether the three requisites were established. Prima facie, it appears there can be little question as to the Dixons' rights to the stock or that Hartzog gave value for it. The only remaining question is whether there existed an agreement between the parties entitling Hartzog to an interest in it.
Bache's answer stated that at the time the Dixons requested return of the stock, it understood there was an "agreement" between the Dixons and Hartzog in an attempt to facilitate a "settlement between them regarding an entitlement to the stock... ." "`Agreement' means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance... ." Section 671.201(3). Moreover § 671.206(2) specifically provides that the Code's Statute of Frauds does not apply to the enforceability of security agreements as set forth under § 679.203. Section 679.203 permits enforcement of a security interest if (1) the collateral is in the possession of the secured party, or (2) the debtor has signed a security agreement containing a description of the collateral. As to the alternative requirement of the agreement's reduction to writing, the U.C.C. comment to § 679.203 states:
One purpose of the formal requisites stated in subsection (1)(b) is evidentiary. The requirement of written record minimizes the possibility of future dispute as to the terms of a security agreement and as to what property stands as collateral for the obligation secured. Where the collateral is in the possession of the secured party, the evidentiary need for a written record is much less than where the collateral is in the debtor's possession; customarily, of course, as a matter of business practice the written record will be kept, but in this Article as at common law, the writing is not a formal requisite. Subsection (1)(a), therefore, dispenses with the written agreement  and thus with signature and description  if the collateral is in the secured party's possession.
The above statutes and comments clearly obviate any necessity that the parties' agreement be reduced to writing. Thus, the fact that a promissory note was executed by Dixon in November, 1976, following the purchase of the stock in June, 1976, is not relevant to the question whether Hartzog had a creditor's interest in the stock.
Furthermore, proof of possession in the putative secured party's agent, Hartzog's attorney, is proof of possession in the secured party for purposes of § 679.203(1)(a). Compare § 679.305 and comments thereunder. Additionally, the pleadings show that Hartzog's return of the stock to Bache was only for the purpose of determining by interpleader the respective rights of the parties in the stock. Finally, the stock was not returned to Dixon, but was placed in the registry of the court awaiting determination by the court of which party was entitled to its possession.
Aside from any provision of the U.C.C.,[2] a genuine issue of material fact exists as to the allegations contained in Bache's answer whether the Dixons, by their actions, had ratified Bache's delivery to Hartzog's agent. A customer may ratify a stockbroker's failure to obey instructions provided he has, or is chargeable with, knowledge of the material facts at the time of his acts or conduct relied upon as ratification. 12 Am.Jur.2d, Brokers, § 155 (1964). And, according to some authorities, the customer is deemed to have ratified the broker's unauthorized act unless, within a proper time, he repudiates it. Id.
*851 The partial summary judgment is reversed and remanded for further proceedings consistent herewith.
MASON, ERNEST E., Associate Judge, concurs.
MELVIN, J., dissents without opinion.
NOTES
[1] Normally the court determines first whether interpleader is appropriate before ruling on other matters. If interpleader is considered proper, the plaintiff is dismissed from the proceeding and the remaining parties should litigate among themselves the matter in dispute. 18A Fla.Jur., Interpleader, § 17 (1958).
[2] Observe that § 671.103 provides that unless there is a specific contrary provision of the U.C.C., general principles of law and equity "shall supplement its provisions." To the same effect, see also Lewis State Bank v. Advance Mortg. Corp., 362 So.2d 406, 410 (Fla. 1st DCA 1978).