**FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as Managing Agent for the Resolution Trust Corporation; Pacifica Real Property Investments Corporation, a California corporation; Pacific Real Estate Mortgage Corporation, a California corporation, Plaintiffs,**

v.

**Joe G. BAKER; Verne F. Potter; William E. Leonard; James C. Roberts; Frank Purcell, Jr.; Joe Sax, Ernest W. Baker, John E. Egdahl; Peter T. Fletcher; Harold Harris, Jr.; Walter L. Huckabay; Joe D. McCarthy; H. Cedric Roberts; Bernard Baker; Bruce A. Kehrli; James D. Stroffe; Franklin D. Hatridge; Lawrence E. Brown; Church and Hastings, Ltd., a Colorado corporation; Joseph L. Hastings, Defendants.**

No. SA CV 89–386 AHS (RWRx).

United States District Court, C.D. California.

June 18, 1990.

C. Stephen Howard, Robin D. Wiener, Michael J. Mailloux, Tuttle & Taylor, Los Angeles, Cal. (Bruce J. Pederson, Federal Deposit Ins. Corp., Washington, D.C., of counsel), for plaintiffs.

Stephen Drummy, Drummy, Garrett, King & Harrison, Costa Mesa, Cal., for Joe Sax, William E. Leonard, James C. Roberts, H. Cedric Roberts, Frank Purcell, Jr., Ernest W. Baker and Harold Harris, Jr.

Wayne King, Thompson, White, King & French, Valencia, Cal., for Bernard Baker.

Mark Weisman, Weisman, Butler & Watson, Beverly Hills, Cal., for Franklin D. Hatridge.

Jay Zybelman, Zybelman, Paluso, Alter, Graham & Sceper, San Diego, Cal., for Peter T. Fletcher.

Dennis Winston, Rosen & Winston, Los Angeles, Cal., for Walter L. Huckabay, John E. Egdahl and Joe D. McCarthy.

Timothy J. Harris, Charlston, Revich & Williams, Los Angeles, Cal., for Lawrence E. Brown.

Steven J. Stanwyck, Los Angeles, Cal., for Bruce A. Kehrli.

Joseph Hastings, Colorado Springs, Colo., pro se and for Church and Hastings, Ltd.

Robert Peterson, Friedman, Peterson & Walling, Newport Beach, Cal., for James D. Stroffe.

Paul B. George, David A. Sprowl, McDermott, Will & Emery, Newport Beach, Cal., for Verne F. Potter.

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTIONS TO STRIKE AFFIRMATIVE DEFENSES

STOTLER, District Judge.

### I. BACKGROUND

Plaintiff Federal Deposit Insurance Corporation, in its capacity as managing agent for the Resolution Trust Corporation acting in its corporate capacity (RTC), instituted this action on June 9, 1989, asserting jurisdiction under 28 U.S.Code sections 1345, 1331, 12 U.S.Code section 1819, the doctrine of pendent jurisdiction, and Section 501 of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 Public Law No. 101–73 (FIRREA or 1989 Act). At the time suit commenced, the Federal Deposit Incorporation Corporation (FDIC) served as managing agent for the Federal Savings and Loan Insurance Corporation (FSLIC), now succeeded by RTC under FIRREA, which was conservator for Pacific Savings Bank (Pacific).

Pacific was a state-chartered savings and loan association whose deposits were insured by the FSLIC and which was subject to the concurrent regulatory jurisdiction

and authority of both the State of California and the FSLIC. Pacific's lending and investment activities were carried out through "a number" of wholly-owned subsidiaries including named plaintiffs Pacifica Real Property Investments Corporation (PRPIC) and Pacific Real Estate Mortgage Corporation (PREMCO). A third such subsidiary, not named as a plaintiff, was Pacific Savings Bank Realty Corporation (PSBRC).

On February 7, 1989, the Federal Home Loan Bank Board (FHLBB) found that Pacific was insolvent and appointed the FSLIC as conservator. On the same date, the FHLBB, the FSLIC, and the FDIC entered into a management agreement which authorized the FDIC to exercise "all of the rights, powers, privileges, immunities, and duties granted to or imposed upon the FSLIC" as a conservator or receiver under applicable laws, regulations, resolutions, and orders issued thereunder. Again on the same date, FDIC took possession of Pacific. On October 12, 1989, the Director of the Office of Thrift Supervision placed Pacific into receivership, the RTC succeeding itself from conservator to receiver. On October 13, 1989, pursuant to a "Contract of Sale" between the receiver and the RTC, the RTC became assignee of all the receiver's rights in any actions, judgments or claims against any of Pacific's officers, directors, employees, and any others whose action or inaction may be related to any loss incurred by Pacific.

According to the operative pleading, the Corrected Second Amended and Supplemental Complaint (Complaint) filed November 3, 1989, the plaintiffs seek damages from two groups alleged to have caused Pacific's insolvency: former directors and officers of Pacific and its subsidiaries, and appraisers who rendered valuation services for properties purchased by Pacific and its subsidiaries.

The director-officer defendants are named in claims for breach of fiduciary duty, negligence, and breach of contract (except for two defendants). A claim for money lent against two other defendants in this category is not here at issue. The appraiser defendants have been sued for professional negligence, negligent misrepresentation, and breach of contract.

Plaintiffs claim that the acts and omissions of the defendants resulted in a loss to plaintiffs in excess of $70 million. The director-officer defendants are each alleged to have initiated and continued, without adequate supervision or safeguards, a strategy of engaging Pacific and PRPIC in a program of high-risk commercial and construction lending and investment which looked profitable but actually concealed losses. Various specific loans, syndications, and other investments, along with excessive compensation schemes, are enumerated in the Complaint. The allegedly risky schemes and defalcations began in 1981 and continued until the resignation of a majority of the then Boards of Directors of Pacific, PRPIC, PREMCO, and PSBRC on June 11, 1987.

Plaintiffs further allege that the facts material to their claims for relief were not and could not have been known until "sometime after June 11, 1987." Since Pacific and its wholly-owned subsidiaries were under the "domination" of defendants from May 1981 until after June 11, 1987, Pacific et al. could not have asserted these claims. No official of the United States had the authority to assert these claims for relief until the date of the FDIC take-over, February 7, 1989.

## II. DISCUSSION

### A. *Affirmative Defenses*

The defendants, their status and terms of service (according to the Complaint), and affirmative defenses as set forth in their respective Answers to the operative pleading of plaintiffs are diagrammed in the attached Appendix.

The variety of affirmative defenses offered may be summarized as follows: (1) plaintiffs and their predecessors failed to mitigate their damages; (2) plaintiffs have waived any claims to relief; (3) plaintiffs are precluded from recovery by the doctrine of "unclean hands;" (4) plaintiffs' claims are barred by the doctrine of laches;

(5) plaintiffs' damages resulted from the acts of others beyond defendant's control; (6) plaintiffs are estopped from obtaining relief; (7) plaintiffs' damages, if any, were caused by independent intervening causes and not by acts of defendant; (8) plaintiffs and their predecessors were contributorily negligent, barring or reducing recovery from defendant; (9) plaintiffs' claims are barred for failure to give timely notice to defendants of their objections to the loans, investments and transactions named in the complaint; (10) plaintiffs' claims are barred because they and their predecessors, including FSLIC and FHLBB "in their regular and usual examination and review processes" acquiesced in and approved of the acts complained of; and, (11) plaintiffs' claims are barred because of restrictions and limitations placed on Pacific and its subsidiaries by federal regulators as of 1986 whose orders, consent agreements, and directives prevented the officers and directors from taking protective actions. None of the Affirmative Defenses just summarized specify dates, transactions, or particular events. Not all defendants raise all defenses, as can be seen by reference to the diagram in the Appendix, but all must be discussed in order to rule on plaintiffs' motions.[1]

### B. *Plaintiffs' Motions to Strike*

On December 13, 1989, January 2, and January 29, 1990, plaintiffs moved pursuant to Rule 12(f) of the Federal Rules of Civil Procedure to strike the foregoing affirmative defenses. On March 8 and after oral argument on the above motions was heard, a fourth Motion to Strike Affirmative Defenses was filed. This additional motion was also submitted for decision. By this Order, the Court rules that plaintiffs' motions are meritorious, that the affirmative defenses targeted by the motions to strike do not provide a legal basis for defeating the claims of the FDIC and that

they should therefore be stricken from the Answers as they pertain to the FDIC.

Certain of these affirmative defenses may remain, however, as they may apply to the non-federal plaintiffs.

### 1. The "No Duty" Rule

■ Plaintiffs argue that defendants cannot maintain defenses by which the conduct of federal banking regulators eliminates or reduces defendants' liability for their otherwise wrongful acts. Plaintiffs seek to strike defenses which fall into two groups. The first are those defenses explicitly based on the activities of federal regulators, namely, those asserting acquiescence in the institution's transactions and those asserting restrictions and limitations placed on the institution by way of orders and directives said to have begun in 1986. The second group are those defenses which *may* be based in part on the regulators' conduct, namely, failure to mitigate, waiver, unclean hands, actions of others, estoppel, intervening acts, and contributory negligence (Motion to Strike filed March 8, 1990, page 7). These are targeted for elimination from the Answers only to the extent that the defendants contend that the conduct of regulators, for example, in administering examinations or in limiting the types of investments Pacific or its subsidiaries could make, is claimed by defendants to constitute or support the above defenses. In other words, plaintiffs do not contend as to these latter defenses that if defendants have in mind some other factual basis for these defenses that they cannot be maintained.

Plaintiffs' authority for striking defenses based on regulatory conduct starts with *Harmsen v. Smith*, 586 F.2d 156, 157 (9th Cir.1978). Former directors of an insolvent bank, named in suits by the bank's shareholders and the FDIC, filed third-party complaints against the United States seeking indemnity for any liability they may have incurred. They alleged that the

---

**1.** Specifically, plaintiffs request an order striking affirmative defenses nos. 3–7, 10, 11, 15, 18–20 of the Leonard defendants, Potter defendants, Stroffe defendant and Kehrli defendant; no. 3 of the Huckabay, Egdahl and McCarthy defendants; no. 5 of defendant Hatridge; nos. 4–6, 8, 9, 11, and 12 of defendant Brown; nos. 5 and 6 of defendant Hastings; nos. 3–7, 10, 11, 15, 20, and 21 of defendant Fletcher; and nos. 3–7, 10, 11, 15, 18 and 19 of defendant Bernard Baker.

Comptroller of the Currency was negligent in performing bank examinations, in supervising employees who performed the examinations, and in failing to discover illegal or unsound banking practices of the bank. Specifically, the directors argued that the Comptroller owed the shareholders a duty of care because a duty in favor of the shareholders should be implied from the statutory obligations imposed upon the Comptroller to conduct bank examinations and because the Comptroller assumed a duty of care by his actions in giving copies of bank examinations to the bank. Holding that nothing in the statutory scheme "suggests that any such duty should be implied," the *Harmsen* court observed that federal examination of national banks was designed to provide the Comptroller with information necessary to perform his regulatory function. Said the court:

> We agree with every other court that has considered the issue that the federal scheme of bank regulation creates no duty from the Comptroller to shareholders and directors of national banks. (*In re Franklin National Bank Securities Litigation* (E.D.N.Y.1978) 445 F.Supp. 723, 731; *Social Security Administration Baltimore Federal Credit Union v. United States* (D.Md.1956) 138 F.Supp. 639, 646. *See also Kaufman v. Evans,* Civ.No. 127–71 (D.M.J. July 21, 1977).

The *Harmsen* court did assume, for the sake of argument, that a case could arise in which the Comptroller so far participated in the management of a bank that his conduct could create a duty to the stockholders. However, as to statutory tasks, the Comptroller was held to assume no special relationship to the stockholders or to directors who claim reliance on the results of examinations.

To the same effect is *First Savings and Loan Ins. Corp. v. Alexander,* 590 F.Supp. 834 (D.Haw.1984) where the district court denied leave to amend answers to add allegations that the FSLIC, FHLBB, and the United States failed to warn the director-defendants of one defendant's allegedly unsavory reputation and of one particular loan. Holding that the "government agencies had no duty to warn defendants," the

*Alexander* court cited, as did the court in *Harmsen,* to *In re Franklin National Bank Securities Litigation,* 445 F.Supp. 723 (E.D.N.Y.1978) ("Franklin I").

In *Franklin I,* the trial court reviewed allegations in complaints that the FDIC went beyond its normal regulatory role and participated in the actual operation of the insolvent bank. Sworn proof filed in opposition to the Government's motion to dismiss averred that the Government "actively involved itself" in the bank's affairs and "established a constant federal presence" there. These actions, taken pursuant to statutory obligation, did not create any duty to the banks so regulated. Said Judge Platt, "[t]he regulatory scheme is intended primarily for the benefit of the public and the common weal, not for the benefit of banks and bank directors." *Id.* at 731. Likewise, the court concluded that no common law duty arose: "By regulating the banks, the United States does not thereby assume a duty to the banks such that negligent regulation gives rise to tort liability." *Id.* at 732. However, the court was willing to assume that "if the Government goes beyond the normal regulatory activities and substitutes its decisions for those of the officers and directors, and if the bank and bank directors reasonably rely on these actions of the Government, the Government may assume a duty to those parties to prevent fraud." *Id.* at 734. The pleadings before this Court resemble not at all the complaints in *Franklin I* and no proof of the sort there offered in opposition to the motion to strike has been presented. We can justifiably part company with *Franklin I.*

Plaintiffs also rely on several unpublished decisions and on reported decisions from other circuits as follows: *First State Bank of Hudson County v. U.S.,* 599 F.2d 558 (3rd Cir.1979) (bank could not maintain suit against FDIC under Federal Tort Claims Act to recover losses suffered during years its former president misapplied bank funds, albeit FDIC examiners knew of crimes, or, in the alternative, FDIC failed to discover malfeasance and violated standard of due care); *FDIC v. Carlson,*

698 F.Supp. 178 (D.Minn.1988) (defense of contributory negligence based on FDIC's failure to maximize recovery available on bad loans after bank's failure dismissed where defendants could not establish that the FDIC as receiver owed duty to officers to collect bad loans without negligence); *FSLIC v. Burdette*, 718 F.Supp. 649 (E.D. Tenn.1989) (affirmative defenses should be struck where defenses of contributory negligence and failure to mitigate damages would require public to bear possible errors of judgment by FSLIC as receiver rather than persons guilty of wrongdoing—if officers and directors are found liable, these defenses will not be available to them); *FDIC v. Greenwood*, 719 F.Supp. 749 (D.Ill.1989) (motion in limine granted to preclude affirmative defenses of contributory negligence and assumption of risk; FSLIC owed no duty to institutions or their officers and directors—duty of FDIC to collect on assets of failed institution runs to public).

The Ninth Circuit cases have sought to distinguish between the regulatory or discretionary functions of government agencies and their ministerial or operational functions. For example, in *Alexander,* the regulatory functions did not result in a duty to warn. In *FDIC v. Carter,* 701 F.Supp. 730, 738 (C.D.Cal.1987), the court articulated the distinction thus:

> When the FDIC acts in a purely proprietary capacity, for instance when it collects routine debts and manages routine assets, it can assume a duty to a bank. As defendant correctly argue, it would be extremely inequitable if the FDIC could negligently fail to collect on a loan, and then sue the directors and officers of the bank for the loss on the loan. The Court therefore holds that with respect to such proprietary functions, the FDIC is liable to the directors and officers of a bank for its own negligence. This negligence can be the basis of either an affirmative defense or a compulsory counterclaim for recoupment.

*Id.* at 736–737.

It is *Carter* which supports all defendants' opposition to the plaintiffs' motion to strike. *Carter* was premised on what was perceived as an "emerging consensus" that most of the FDIC's actions when disposing of the assets of a bank *are* purely ministerial and are not grounded in social or economic policy. *Id.* at 736. The remaining cases relied upon by defendants turn on the "proprietary" distinction as well. The FDIC challenges the validity of *Carter's* rationale on two fronts: first, that this premise, if ever valid, is no longer valid in light of the passage of FIRREA. Second, the current emerging trend among courts is to adopt the "no-duty" rule and eliminate the regulatory/operational distinction.

The FDIC highlights certain portions of FIRREA which emphasize substantial public policy directives for the RTC's disposition of the property of failed institutions. These concern maximizing of the net present value of return and avoidance of economic impact for those real estate markets that are distressed. Sections 21A(b)(3)(C)(i), (ii); 21A(b)(12)(D). The FDIC reasons, in turn, that these statutory directives signify that the FDIC is executing public policy determinations made by Congress. Thus, it acts with agency discretion and cannot be described as it responds to its duty in disposing of assets as either ministerial or purely proprietary.

The massive overhaul effected by FIRREA is, if anything, understated by the FDIC. As the introduction to an article in the American Bar Association's publication, *The Business Lawyer,* states, "[T]he [Act] represents a sweeping legislative effort to resolve the financial crisis confronting the thrift industry." [Fn. omitted.] Clark, Murtagh, and Corcoran, *Regulation of Savings Association Under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989,* 45 Bus.Law. 1013 (1990). The FDIC rightly relies on FIRREA as good reason to characterize the RTC's and FDIC's duties in disposing of failed institutions' assets as carrying no duty to any but the public. Only defendant Brown suggests that he is entitled to verify compliance with provisions of FIRREA and assert RTC's non-compliance as an affirmative defense. While it is too early for extensive case law to have developed under

FIRREA, Brown cites no case to support his contention. The FDIC has authority to the contrary on its side. *See First State Bank of Hudson County v. United States*, 599 F.2d 558, 564 (3rd Cir.1979).

The more recent cases bear out this public policy theme. As articulated by the Maryland District Court:

> ... [N]othing could be more paradoxical or contrary to sound policy than to hold that it is the public which must bear the risk of errors of judgment made by its officials in attempting to save a failing institution—a risk which would never have been created but for defendants' wrongdoing in the first instance. Yet, this is precisely what the consequence would be if, as defendants contend, they are permitted to assert claims, either directly or indirectly by way of defense, against FSLIC's insurance fund.

*FSLIC v. Roy*, Case No. JFM–8–1227, 1988 WL 96570, 1988 U.S.Dist. LEXIS 6840 (D.Md. June 28, 1988). In *Roy*, the FSLIC brought an action against former officers and directors of First Federal of Maryland, alleging negligence in recommending and approving certain commercial loans. The plaintiff's motion to strike the affirmative defenses of contributory negligence and assumption of risk was granted. The court concluded that the "FSLIC owes no duty to those institutions or to those whose negligence has brought them to the brink of disaster." *Id.* The court reasoned that because the public is the intended beneficiary of the FSLIC's actions, it would be contrary to public policy to hold that the public must bear the risk of errors in judgment made by its officials in their efforts to prevent the demise of a savings institution. *Id.* Accordingly, the court found that the FSLIC's own alleged negligence was immaterial to the issues in that case. *Id.*

These recent cases are persuasive. The Court has given serious consideration to the *Carter* decision, coming as it does from the same circuit and district. *See Haleiwa Theatre Co. v. Forman*, 37 F.R.D. 62, 65 (D.Haw.1965). Based on the foregoing cases, however, and Congress' recent ac-

tion in adopting FIRREA, the Court must reach a different conclusion from that expressed in *Carter*. The Court holds that no duty devolves onto the FDIC in favor of officers and directors of a failed banking institution when the FDIC's role is either regulator or receiver of that institution. Accordingly, the Court strikes the affirmative defenses raised by defendants to the extent these affirmative defenses assert a duty on the part of federal regulators.

The appraiser defendants should be treated no differently. The duty owed to defendants Lawrence E. Brown, Church and Hastings Ltd., and Joseph L. Hastings is co-extensive to whatever duty is owed to the bank. *See FDIC v. Cherry, Bekaert & Holland*, 129 F.R.D. 188 (M.D.Fla.1989) ("no reasonable basis and no support in the case law to treat a failed bank's outside accountants any differently than the bank's officers and directors with regard to affirmative defenses of contributory negligence, mitigation of damages, or with regard to discovery of post-closing collection efforts ...").

However, the motion is granted with respect to the FDIC only. Plaintiffs have not established any basis for striking the affirmative defenses asserted against the claims of the nongovernmental plaintiffs (PRPIC and PREMCO).

### 2. Laches

■ Plaintiffs also seek to strike the affirmative defense of laches, to the extent that it is asserted against the federal plaintiffs FDIC or RTC. Because suit was brought by the RTC, the defense is unavailable. *FDIC v. Roldan Fonseca*, 795 F.2d 1102, 1109 (1st Cir.1986) (defense of laches not applicable to action brought by FDIC in its corporate capacity to recover on note). The Leonard defendants concede that this affirmative defense cannot be raised against a federal entity. (See Leonard Opposition at 2). Although defendant Brown attempts to distinguish the cases cited by plaintiffs, he cites no case holding to the contrary. (See Brown Opposition at 10).

The Leonard defendants also concede plaintiffs' motion to strike as to the eighteenth affirmative defense, untimely notice

(See Leonard Opposition at 2). The concession is well-taken, and the motion to strike is granted as to laches and untimely notice in all answers asserting these affirmative defenses as against the governmental plaintiffs.

### 3. Amendment

No defendant in his opposition suggested that the affirmative defenses might be better pleaded. Nor at oral argument on the motion to strike did any defendant suggest that amendment to the affirmative defenses was being sought. While courts should be cautious before granting a motion to dismiss or strike affirmative defenses, if the defense asserted is invalid as a matter of law, such a determination should be made at an early stage to enable the parties to proceed with the litigation in the proper posture. *Simpson v. Alaska State Comm'n for Human Rights*, 423 F.Supp. 552, 554 (D.Alaska 1976), *aff'd*, 608 F.2d 1171 (9th Cir.1979).

Finally, the Court has considered whether the factual contentions, of which there were few, in the oppositions would make a difference in ruling on these motions to strike were those allegations inserted into the Answers. The conclusion is that amendment would be no more availing than what is presently pleaded. Hence, it would be futile to require defendants to rewrite their affirmative defenses, given the showing made thus far.

### III. CONCLUSION

The Court grants the plaintiffs' Motions to Strike as to plaintiff FDIC. They are denied as to the nongovernmental plaintiffs.

IT IS SO ORDERED.

## APPENDIX

| Order of Affirmative Defenses in Leonard Defendants' Answers | Leonard[1] | Egdahl[2] | Hatridge[3] | Stroffe[4] |
|---|---|---|---|---|
| 3rd. Failure to Mitigate | X | X | X(4th) | X |
| 4th. Waiver | X | | | X |
| 5th. Unclean Hands | X | | | X |
| 6th. Laches | X | | | X |
| 7th. Actions of Others | X | | X(5th) | X |
| 10th. Estoppel | X | | | X |
| 11th. Intervening Acts | X | | | X |
| 15th. Contributory Neg. | X | | | X |
| 18th. Untimely Notice | X | | | X |
| 19th. Acquiescence | X | | | X |
| 20th. Restrictns & Limits | X | | | X |

[1] "Leonard Defendants" includes:
William E. Leonard: Dir., Pacific, '81-'87; Dir., PRPIC, '84-'87; Dir. PREMCO, '86-'87
J.C. Roberts: Dir., Pacific, '81-'86; Dir., PRPIC, '81-86; Dir., PREMCO, '83-'86
Frank Purcell: Dir., Pacific, '81-'87; Dir., PRPIC, '84-'87; Dir., PREMCO, '86-'87
Joe Sax: Dir., Pacific, '81-'87
E.W. Baker: Dir., Pacific, '81-'87
Harold Harris, Jr.: Dir., Pacific, '81-'87
H. Cedric Roberts: Dir., Pacific, '81-'85; Dir. Emeritus, '85-'87
Joe G. Baker: Trustee, Pacific, '81-'87; Dir., PRPIC, '81-'87; Dir., PREMCO, '83-'87
Verne F. Potter: Dir., Pacific, '81-'87; Dir., PRPIC, '81-'87; Dir., PREMCO, '83-'87

[2] "Egdahl Defendants" includes:
John E. Egdahl: Dir., Pacific, '81-'87
Walter L. Huckabay: Dir., Pacific, '81-'86; Dir. Emeritus, '86-'87
Joe D. McCarthy: Dir., Pacific, '81-'85; Dir. Emeritus, '85-'87

[3] Franklin D. Hatridge (officer, Pacific, '84-'86; officer, PREMCO, '84-'86) pleads "Failure to Mitigate" but plaintiffs have not included it in their Motion to Strike Affirmative Defenses.

[4] James Stroffe: Dir., PRPIC, '83-'84 and '86-'87; officer, PRPIC, '83-'86

**APPENDIX**

| Order of Affirmative Defenses in Leonard Defendants' Answers | Kehrli | Fletcher | B.Baker | Brown[5] | Hastings |
|---|---|---|---|---|---|
| 3rd. Failure to Mitigate | X | X | X | X(4) | |
| 4th. Waiver | X | X | X | X(5) | X(5th)[6] |
| 5th. Unclean Hands | X | X | X | X(6) | |
| 6th. Laches | X | X | X | X(8) | X(5th) |
| 7th. Actions of Others | X | X | X | X(9) | X(6th) |
| 10th. Estoppel | X | X | X | X(11) | X(5th) |
| 11th. Intervening Acts | X | X | X | X(12) | |
| 15th. Contributory Neg. | X | X | X | | |
| 18th. Untimely Notice | X | | | | |
| 19th. Acquiescence | X | X(20th) | X(18th) | | |
| 20th. Restrictns & Limits | X | X(21st) | X(19th) | | |

Bruce A. Kehrli: Dir., PRPIC, '84-'86
Peter T. Fletcher: Dir., Pacific, '81-'84
Bernard Baker: Officer, Pacific, '82-'83; Dir., PRPIC, '81-'83

---

[5] Lawrence E. Brown's affirmative defenses are arranged in a different order. Brown was engaged by PRPIC as an appraiser between 1981 and 1984.

[6] Joseph L. Hastings incorporates three affirmative defenses in his 5th affirmative defense. Joseph Hastings was engaged by PREMCO as an appraiser in 1985. Default was entered against Church and Hastings, Ltd. on March 23, 1990.