Thelma V.A. GIBSON, and Catherine H. Fahringer; and F. Lee Bailey, Richard E. Gerstein, Edward A. Carhart, Paul M. Rashkind, Ronald C. Dresnick, and Bonnie Rippingille, d/b/a Bailey Gerstein Carhart Rashkind Dresnick & Rippingille, Plaintiffs,

v.

The RESOLUTION TRUST CORPORATION, Centrust Bank, Centrust Federal Savings Bank, and Citibank, N.A. Defendants.

No. 90–0498–CIV.

United States District Court,
S.D. Florida.

Oct. 30, 1990.

Richard E. Gerstein, Paul M. Rashkind, Bailey, Gerstein, Carhart, Rashkind, Dresnick & Rippingille, Ronald R. Ravikoff, Roberto Martinez, Zuckerman, Spaeder, Taylor & Evans, Miami, Fla., Peter R. Kolker, Blair G. Brown, Zuckerman, Spaeder, Taylor & Evans, Washington, D.C., for plaintiffs.

Maureen Donlan, Asst. U.S. Atty., U.S. Dept. of Justice, Miami, Fla.

Jose I. Astigarraga, Steel, Hector & Davis, Miami, Fla., for Citibank, N.A.

Thomas M. Lahiff, Jr., Citibank, N.A., Legal Dept., New York City.

Sanford L. Bohrer, Susan H. Aprill, Thomson, Muraro, Bohrer & Razook, P.A., Miami, Fla., for David Paul.

Alan Kluger, Kluger, Peretz, Kaplan & Berlin, Miami, Fla., for RTC.

## MEMORANDUM OPINION AND ORDER REGARDING CROSS–MOTIONS FOR SUMMARY JUDGMENT

MORENO, District Judge.

THIS CAUSE has come before the court upon cross-motions for summary judgment filed by the parties. Pursuant to Fed.R. Civ.P. 56, the plaintiffs, Thelma Gibson, Catherine H. Fahringer and the law firm of Bailey Gerstein Carhart Rashkind Dresnick & Rippingille moved for entry of judgment in their favor on Count I of the defendant's counterclaim and crossclaim.[1]

Defendant/Counterclaimant, Resolution Trust Corporation ("RTC"), as Receiver for CenTrust Bank, a Florida State Savings Bank, and as Conservator for CenTrust Federal Bank, a Federal Savings Association, moved for summary judgment on each count of the complaint, seeking declaratory relief that it properly disaffirmed and repudiated an executory contract. The parties have fully briefed the motions and the Court has heard oral argument. The Court makes the following findings of fact and conclusions of law, granting summary judgment in favor of defendant RTC.

### SUMMARY OF THE CASE

This case arises from the actions of the RTC, as Conservator of CenTrust, which, pursuant to the powers granted it by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), repudiated a contract between CenTrust and the Bailey Gerstein law firm. The contract allocated over $11 million dollars for the benefit of the former officers and directors of CenTrust to pay their legal fees and damages resulting from claims made against them connected with their management of the institution.

Pursuant to the terms of the contract, in the event CenTrust failed to indemnify an officer or director, the legal fees and damages of such an officer or director would be paid from the $11 million dollar fund allocated by the contract and held in an account controlled by the Bailey Gerstein law firm. Upon taking over CenTrust, RTC determined that the contract was burdensome and demanded return of the assets contained in the fund. Plaintiffs brought this action seeking declaratory relief under the contract creating the $11 million dollar fund.

### UNDISPUTED FACTS

On August 21, 1986, CenTrust, a savings and loan association chartered under the laws of the State of Florida, entered into a contract (the "Indemnity Agreement") with the law firm of Sparber, Shevin, Shapo, Heilbronner & Book, P.A. which established a fund. The term "fund" was defined in the Indemnity Agreement as referring to cash and securities deposited into a designated bank account for use pursuant to the terms of the agreement. Plaintiff Fahringer was a member of the CenTrust Board of Directors at the time the Indemnity Agreement was executed. The Indemnity Agreement was first amended on January 8, 1987 and again on April 7, 1989. Plaintiff Gibson was elected to the Board of Directors in April 1987.

At the time of the second amendment on April 7, 1989, the Sparber Shevin law firm resigned as counsel and was replaced by the law firm of Squire, Sanders & Dempsey. On January 24, 1990, Squire, Sanders & Dempsey assigned its rights as a party to the Second Amended Agreement to the Bailey Gerstein law firm.

Under the Agreement, the Bailey Gerstein firm is authorized to provide legal representation to CenTrust's officers and directors if claims are made. The Bailey Gerstein firm is to bill CenTrust for the legal services on a monthly basis. If Cen-

---

1. By order dated June 8, 1990, Judge Stanley Marcus bifurcated consideration of the issues in this action to conform to the focus of discovery. Discovery relating to RTC's Affirmative Defens- es to the Plaintiffs' Amended Complaint and Counts II through IV of RTC's Counterclaim and Crossclaim was stayed pending resolution of these cross-motions for summary judgment.

Trust fails to pay any statement within 75 days following receipt of the statement, the Bailey Gerstein law firm may charge against the Fund. The Agreement does not alter CenTrust's obligations to pay future legal fees for its officers and directors.

On February 2, 1990, the RTC was appointed Conservator of CenTrust pursuant to the Office of Thrift Supervision's Administrative Order No. 90–271. On February 4, 1990, the RTC, through its managing agent, Kurt Wierschem, disaffirmed and repudiated the Second Amended Agreement pursuant to Section 212(a), § 11(e) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). At the time of repudiation and disaffirmance of the Second Amended Agreement, the Fund contained in excess of eleven million dollars worth of assets.

## CONCLUSIONS OF LAW

Fed.R.Civ.P. 56(c) provides that summary judgment shall enter if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Plaintiffs and RTC have both moved for summary judgment, stipulating in their briefs and before this Court during oral argument, that the material facts are undisputed. The Court finds that there is no dispute as to the material facts. Summary judgment is therefore proper.

FIRREA provides that a conservator or receiver, in this case, the RTC, may "disaffirm or repudiate any contract or lease—

(A) to which such institution is a party;

(B) the performance of which the conservator or receiver, in the conservator's or receiver's discretion, determines to be burdensome; and

(C) the disaffirmance or repudiation of which the conservator or receiver determines, in the conservator's or receiver's discretion, will promote the orderly administration of the institution's affairs.

Financial Institutions Reform, Recovery, and Enforcement Act of 1989, P.L. 101–73, Section 212(a), § 11(e), 12 U.S.C. § 1821(e). The central issue before the Court then, is whether the RTC properly exercised its discretion in finding that the contract was burdensome and that repudiation would promote the orderly administration of CenTrust's affairs.

Plaintiffs advance six arguments as to why the Bailey Gerstein law firm should retain control of the Fund due to the RTC's improper repudiation of the Agreement, the most compelling of which is plaintiffs' claim that the contract is non-executory and therefore Section 212(a), § 11(e) of FIRREA is inapplicable.[2] The RTC asserts that the power of a conservator or receiver to disaffirm and repudiate burdensome contracts is not limited to executory contracts and the court need not determine whether the Second Amended Agreement is executory or non-executory. Notwithstanding this contention, the RTC maintains that the contract is executory and this fact alone provides ample grounds for disaffirmance and repudiation of the Second Amended Agreement.

RTC contends that any contract is subject to repudiation under § 212 of FIRREA. Plaintiffs argue that only executory

---

**2.** Plaintiffs' arguments as to why Section 212(a), § 11(e) of FIRREA does not empower the RTC to repudiate the Indemnity Agreement (and amendments thereto) or to recover the Fund are as follows: (a) the Second Amended Agreement is non-executory and the RTC has no authority to disaffirm and repudiate a non-executory contract, regardless of whether it is burdensome to the institution; (b) the Second Amended Agreement constitutes a "trust," which is not subject to repudiation and disaffirmance; (c) the RTC is barred by the doctrine of promissory estoppel from disaffirming and repudiating the Second Amended Agreement because CenTrust's offi-

cers and directors relied thereon; (d) the RTC is barred from recovering the assets in the Fund because the officers and directors have a security interest in the fund; (e) application of Section 212(a), § 11(e) of FIRREA constitutes an unconstitutional taking of property in which plaintiffs have a vested right; and (f) Section 212(a), § 11(e) of FIRREA should not be applied retroactively to allow the RTC to repudiate a non-executory contract. Because the court finds that the Agreement constitutes an executory contract, the court need not resolve the issues presented by plaintiffs final two arguments.

contracts may be repudiated under the statute and concede that if the contract is executory, FIRREA applies and the RTC is empowered to disaffirm and repudiate the contract. Because the court finds that, as a matter of law, the contract is executory and clearly subject to repudiation, the court need not determine the issue as to the RTC's authority to repudiate non-executory contracts. The court finds that the Second Amended Agreement is an executory contract and thus RTC properly repudiated the contract pursuant to § 212 of FIRREA.

## THE SECOND AMENDED AGREEMENT IS AN EXECUTORY CONTRACT.

■ The courts have yet to agree on a standard definition of the term "executory contract." However, the Supreme Court and each Circuit which has addressed the question directly, including the Eleventh Circuit, has found that reciprocal remaining obligations characterize an executory contract. See *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 522, n. 6, 104 S.Ct. 1188, 1194, n. 6, 79 L.Ed.2d 482 (1984); *In re Brada Miller Freight System, Inc.*, 702 F.2d 890, 894, n. 10 (11th Cir.1983).

The cornerstone of Plaintiffs' position is the contention that both CenTrust, by transferring the requisite assets and selecting counsel for the Fund, and its officers and directors, by providing their services, have fully performed under the Second Amended Agreement. Underlying this contention is the implication that the Second Amended Agreement is in effect a contract of indemnity between CenTrust and plaintiff officers and directors in exchange for the rendering of their services in managing the institution. Because plaintiffs have rendered their services, and performance is complete, Plaintiffs argue that the contract was non-executory at the time of the repudiation. Plaintiffs' argument is fatally flawed as the Second Amended Agreement clearly constitutes a contract between CenTrust and the Bailey Gerstein law firm for the prepayment of future legal services for the benefit of CenTrust's officers and directors.

The Second Amended Agreement consists of mutual promises between CenTrust and the Bailey Gerstein firm regarding the rendering of, and payment for, future legal services to CenTrust's officers and directors. Neither CenTrust nor the Bailey Gerstein firm has performed under the Agreement; Bailey Gerstein has not provided legal services nor has it billed CenTrust for such unprovided services. In turn, Centrust has not paid for Bailey Gerstein's services.[3]

Additionally, the express language of the Second Amended Agreement specifically supports the RTC's position that any rights plaintiff officers and directors may have to the Fund as third-party beneficiaries are rights not yet vested as the existence of the Fund does not relieve CenTrust from its future performance obligations. A portion of the Second Amended Agreement provides:

> ... it is understood and agreed between CenTrust and [Bailey Gerstein] that Counsel and any substitute counsel will be rendering their services under this Agreement to [officers and directors] of CenTrust at CenTrust's request, and that CenTrust, subject only to CenTrust having the appropriate legal power, is and will be directly responsible for paying all Counsel's and substitute counsel's fees and costs incurred in rendering such services. Counsel's and substitute counsel's right to seek or obtain payment from the Fund shall not relieve CenTrust of its obligation, subject only to CenTrust having the appropriate legal power, to pay Counsel's and substitute counsel's fees and costs, nor shall it preclude Counsel or substitute counsel from taking any other action Counsel or substitute counsel deem appropriate to collect their fees and costs from CenTrust or other parties.

Second Amended Agreement, Section 3(f).

Centrust's present inability to pay does not change the nature of the contract from executory to non-executory. Nor does the fact that CenTrust actually transferred as-

---

**3.** To the extent that the Bailey Gerstein law firm has rendered services prior to repudiation of the contract, Section 212(a)(6) of FIRREA, § 11(e)(7), 12 U.S.C. § 1821(e)(7), entitles the law firm to obtain compensation for such services. This authority however, in no way affects RTC's right to repudiate the contract.

sets to create the $11 million dollar fund affect the contract.

In *FSLIC v. Angell, Holmes & Lea*, 838 F.2d 395 (9th Cir.1987), motion to modify denied, 842 F.2d 239 (9th Cir.1988) *cert. denied sub nom., Van Voorhis & Skaggs v. FSLIC*, 488 U.S. 848, 109 S.Ct. 127, 102 L.Ed.2d 100 (1988), and *Haralson v. Federal Home Loan Bank Board*, 1986 Fed. Banking L.Rep., (CCH) 91,883 (D.D.C. Sept. 9, 1986), the courts specifically contemplated the power of a federal conservator or receiver to disaffirm and repudiate contracts entered into by failing financial institutions attempting to earmark assets to fund future litigation.

In *FSLIC v. Angell, Holmes*, a savings and loan, anticipating financial failure and a federal takeover, transferred $500,000.00 in advance legal fees to two law firms. The retainer agreements provided that the fees were deemed earned upon payment and non-refundable. Similarly, in *Haralson*, the failed savings institution also provided two law firms with advance payment of legal fees for work to be performed in the future.

Both the *Angell, Holmes* and *Haralson* courts required the law firms to return the advance payments, determining that the payments made by the institutions for future legal services were assets of the institutions belonging to the creditors and depositors, not assets belonging to the prior management. The *Haralson* court reasoned that "[u]nder Plaintiff's theory the former management of an [institution] will be able to virtually dissipate the assets of an [institution] under the guise of paying advance legal fees." *Haralson*, at 86,679.

Plaintiffs rely on *In re Dolphin Titan International, Inc.* 93 B.R. 508 (S.D.Tex. 1988), in support of their position. Such reliance is misplaced. There, a solvent debtor contracted with an insurance company to provide workers' compensation cover-

age through the establishment of a "loss fund." The debtor made contributions to the loss fund and the fund was managed by a representative of the insurance company. The *Dolphin Titan* court found that the insurance contract was terminated prior to the Debtor's filing in bankruptcy,[4] the coverage bargained for was provided and the contract was therefore non-executory.

Plaintiffs similar reliance on *In the Matter of Grayson–Robinson Stores, Inc.*, 321 F.2d 500 (2nd Cir.1963) is also misplaced as the holding in that case provides no precedent for this Court in the pending matter. The *Grayson–Robinson* court, upon review of a skeletal record, held that the debtor's guaranties of leases to the debtor's subsidiaries which had not been put into bankruptcy but which had defaulted on their leases were not executory contracts subject to rejection under the Bankruptcy Act. The *Grayson–Robinson* court explained that it had no choice but to affirm the trial court as the issue was presented to the Second Circuit in such vacuous form so as to preclude meaningful review.

This Court concurs with the *Haralson* court in that there is simply no precedent to support the plaintiffs' position. When the RTC repudiated and disaffirmed the Second Amended Agreement, the RTC, like FSLIC in *Angell, Holmes*, and the FHLBB in *Haralson*, became entitled to a return of the amounts prepaid, but as yet unearned.

Plaintiffs also charge that they have vested property interests arising out of the Agreement in addition to their contractual rights, and the assets in the Fund cannot be considered part of CenTrust's estate. In support of this proposition, Plaintiffs cite *In re Palm Beach Heights Development & Sales Corp.*, 52 B.R. 181 (S.D.Fla. 1985). The *Palm Beach Heights* court held that a fund which had previously been set aside prior to bankruptcy was not property of the debtor's estate.[5]

---

**4.** All contributions to the loss fund were completed. The debtor's only remaining duty under the loss fund agreement was to cosign checks; the insurance company's only remaining duties concerned final payment of claims, and return to the debtor of any excess in the loss fund once all claims were paid. The court determined that the remaining duties of the parties were not significant and the mere existence of the debtor's contingent right to reimbursement from the loss fund does not make the contract executory.

**5.** The court added that any claim against the trust fund was the property of the estate but the trust fund itself was not.

In *Palm Beach Heights,* the debtor entered into a property improvement agreement which established a trust fund to assure the installation of improvements promised to land contract purchasers. The improvements were never completed and the land was unable to be used as originally contemplated. The Department of Business Regulation Division of Land Sales began an action against the debtor to acquire the improvement trust account for the benefit of the contract buyers. The debtor sought to retain control of the trust as property of the estate under the Bankruptcy Code. The *Palm Beach Heights* court's finding was premised on the fact that the fund was established as a trust; the case provides support for plaintiffs' position only if the Second Amended Agreement creates a trust. The court finds that the Agreement does not constitute a trust and *Palm Beach Heights* is therefore not persuasive.

THE SECOND AMENDED AGREEMENT DOES NOT CREATE A TRUST.

■ Plaintiffs claim that the Fund, which was never actually denominated a "trust," was in fact the functional equivalent of a trust for the benefit of the directors and officers of CenTrust. Plaintiffs argue that it is clear from the Agreement that CenTrust, as the settlor of the trust, intended the Bailey Gerstein law firm, as the *de facto* trustee, to use the Fund, as the *trust res,* to pay legal fees and damage awards. Plaintiffs contend that these factors comprise all of the elements necessary to establish an express trust. The RTC concurs with plaintiffs in that intent and transfer of property are necessary to establish a trust but counters that no such intent or transfer is present in the instant case. RTC points out that "for the purpose of proving the trust relationship, the evidence must be clear and unmistakable both as the intent to create the trust and as to the execution of that intent. The acts or words relied on must be unequivocal." *Webster v. St. Petersburg Federal Savings & Loan Assn.,* 155 Fla. 412, 20 So.2d 400, 403 (1945).

■ It is well settled that an express trust cannot exist unless there is an expression of an intent by the parties to create a

trust, and a transfer of legal ownership in the subject property to the trustee. *Columbia Bank for Cooperatives v. Okeelanta Sugar Cooperative,* 52 So.2d 670 (Fla.1951).

The Agreement, as evidenced both in form and substance, unambiguously indicates the parties' intent to enter into a contract to provide legal services. The Second Amended Agreement uses none of the language typically indicative of the formation of a trust, classic trust terms like "grantor" and "trustee" appear nowhere in the Agreement. CenTrust entertained contract negotiations and renegotiations with at least three different law firms since the creation of the original Indemnity Agreement as well as guidance from its own legal staff. If a trust instrument was intended, there existed sufficient legal aptitude to accomplish such a goal.

■ Instead, the Agreement speaks to "consideration" and "mutual covenants" and considers "the express benefit of the agents" derived from the contract. Plaintiffs are correct in asserting that the absence of traditional trust language is not dispositive; it is however strong evidence of the intention of the parties. *McCrory Stores Corp. v. Tunnicliffe,* 104 Fla. 683, 140 So. 806, 808 (1932). Plaintiffs have cited several cases in support of this contention.

Each of the cited cases is distinguishable from the present case as the instrument at issue there used either specific trust language or clearly expressed intent by the settlor to create a trust; and each of the trust settlors was legally and financially unsophisticated, characteristics CenTrust is unable to claim. *See Voorhies v. Blood,* 127 Fla. 337, 173 So. 705 (Fla.1937); *In re Smith,* 73 B.R. 211 (N.D.Fla.1986). The plain language of the Agreement combined with the knowledge and skill of the parties indicates that no trust was ever intended.

■ The second element required for the creation of an express trust is that the settlor divest itself of legal title in the trust property by transferring it to the trustee. The trustee holds legal title to the property while the beneficiary holds equitable title.

*Webster,* 20 So.2d at 403. While the assets of the Fund were placed into what has been termed a "trust account" at Citibank, Cen-Trust has always held legal title to the Fund and exercised extensive control over the assets in the Fund. Indeed, CenTrust, in its sole discretion, was authorized to, and did in fact, manipulate the assets in the Fund, exchanging them at will.

Plaintiffs contend that the settlor may retain extensive control over a trust without invalidating the trust citing *In re Estate of Herron,* 237 So.2d 563 (Fla. 4th DCA 1970) and *Lane v. Palmer First National Bank & Trust Co.,* 213 So.2d 301 (Fla. 2d DCA 1968) in support of their position. Both of those cases involved trust instruments which unambiguously created trusts. The only issue for determination by the *Herron* and *Lane* courts was whether the retention of powers by the settlor was sufficient to render a trust illusory. Neither case provides guidance for this court.

Alternatively, plaintiffs rely on a line of insurance cases in support of their trust argument. *See e.g. In re Louisiana World Expositions, Inc.,* 832 F.2d 1391 (5th Cir.1987). In *Louisiana World,* a corporation, prior to insolvency, purchased liability policies from an insurance company for the benefit of its officers and directors. During bankruptcy proceedings, the corporation attempted to include the proceeds in its estate. The *Louisiana World* court rejected the corporation's argument holding that the estate had only those property rights attributable to the debtor corporation. The court found that since the debtor had no ownership rights in the proceeds of the insurance policy, the estate could have no such property rights. Rather, the insurer owed its obligation to the named insured.

Plaintiffs suggest that the fact that CenTrust deposited funds into an account instead of purchasing an insurance policy is not significant or even relevant. Contrary to plaintiffs' contention, this factor is critical as it was the insurance company, not the insolvent corporation which received the payments. In this case, CenTrust, acting as the insurer, made premium payments to itself. Premiums paid to an insurance company are not held in trust for the benefit of the insured, but are assets of the insurance company available to satisfy the insurance company's general debts. See Fla.Stat. § 631.154 (Supp.1990); *Charles W. Virgin Insurance Agency, Inc. v. Alabama General Insurance Co.,* 114 So.2d 524 (Fla. 1st DCA 1959); *Robertson v. Malone,* 190 F.2d 756 (5th Cir.1951). CenTrust, as an insolvent insurer, cannot hold paid premiums in trust for an insured; the premiums are assets of the estate and attainable by general creditors.

■ Finally, plaintiffs assert that if the Second Amended Agreement failed to create an express trust, this court should find the existence of a resulting trust. A resulting trust requires the establishment of the requisite intent to create a trust by clear and convincing evidence. *King v. King,* 111 So.2d 33 (Fla.1959); *Noti v. Holiday,* 458 So.2d 795 (Fla. 3d DCA 1984). For the reasons stated above regarding the parties' intent to create a trust, this court finds that the parties did not express intent sufficient to create any trust, express or resulting. Since the court has found that no trust exists, the court does not reach a finding regarding plaintiffs' assertion that FIRREA does not empower the RTC to repudiate or disaffirm trusts.

### THE PROMISSORY ESTOPPEL DOCTRINE DOES NOT BAR RTC's ACTIONS.

■ It is well settled that the Government is not subject to the traditional rules of estoppel. *Heckler v. Community Health Services, Inc.,* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). In *Office of Personnel Management v. Richmond,* —— U.S. ——, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990), *reh'g denied* —— U.S. ——, 111 S.Ct. 5, 111 L.Ed.2d 821 (Aug. 14, 1990), the Supreme Court has held that some type of "affirmative misconduct" is necessary to estop the Government. The majority of circuits have followed the *Richmond* ruling mandating that estoppel may not be invoked absent a showing of affirmative misconduct by a government official or agent.[6]

---

6. *See e.g. Hanson v. Office of Personnel Management,* 833 F.2d 1568 (Fed.Cir.1987); *Sweeten v.*

*United States Department of Agriculture Forest Service,* 684 F.2d 679 (10th Cir.1982); *TRW Inc.*

The Eleventh Circuit however has not imposed the affirmative misconduct standard.[7]

■ The Eleventh Circuit has applied a three-fold test to parties seeking to apply estoppel against the Government: (1) the government must have acted in its proprietary capacity rather than in its sovereign capacity; (2) the traditional elements of estoppel must be present; and (3) the government officer or agent making the representation relied on must have acted within the scope of his authority. *United States v. Killough,* 848 F.2d 1523 (11th Cir.1988); *United States v. Vonderau,* 837 F.2d 1540 (11th Cir.1988). The Court need not determine the factual issues present regarding the nature of any statements or promises made by CenTrust and plaintiffs' reliance thereon; as a matter of law, the RTC acted in its sovereign capacity in repudiating the Second Amended Agreement.

■ Proprietary governmental functions include essentially commercial transactions involving the purchase or sale of goods and services and other activities for the commercial benefit of a particular government agency; the government's activities are analogous to those of a private concern. *Federal Deposit Ins. Corp. v. Harrison,* 735 F.2d 408, 411 (11th Cir.1984). Conversely, in its sovereign role, the government carries out unique governmental functions for the benefit of the whole public. *Id.*

The recently decided case of *Federal Deposit Ins. Corp. v. Baker,* 739 F.Supp. 1401 (C.D.Cal.1990) considered the RTC's role when acting as conservator, holding that the defendants' could not assert estoppel against the FDIC and RTC.[8] The *Baker* court noted that FIRREA "emphasize[s] substantial public policy directives for the RTC's disposition of the property of failed institutions," *Baker, Id.* at 1406, and concluded that the RTC's duties in disposing of failed institutions' assets are duties to the public. Here, at Congress' direction, the RTC acted in its sovereign capacity to maximize the recovery from CenTrust's failure. Plaintiffs may not estop the RTC from disaffirming and repudiating the Second Amended Agreement.

## PLAINTIFFS DO NOT HAVE A SECURITY INTEREST IN THE FUND.

Plaintiffs assert that Section 212(a) of FIRREA, § 11(e)(11), 12 U.S.C. § 1821(e)(11), bars the RTC from avoiding any perfected security interest. They allege that the officers and directors contractual interest in the Indemnity Fund is either an equitable lien on the Fund, or a legally enforceable security interest.[9] Plaintiffs' arguments are futile both legally and factually: (1) under the applicable law, even if plaintiffs' status is that of an equitable lien holder, the RTC, as Receiver for CenTrust, takes priority over equitable lien creditors; and (2) under the uncontroverted facts, plaintiffs cannot hold a perfected security interest as they do not possess the assets in the Fund.

■ Pursuant to the Florida statutes, an unperfected security interest is subordinate to the rights of a lien creditor. Fla. Stat. § 679.301(1)(b). In *Rockford Housing Authority v. FDIC,* 1986 W.L. 14130 (N.D.Ill. December 5, 1986), the court, relying on an Illinois statute similar to Florida's statute, found that the FDIC, in its capacity as receiver of a failed bank, held

---

*v. Federal Trade Com.,* 647 F.2d 942 (9th Cir. 1981); *Edgewater Hospital, Inc. v. Bowen,* 857 F.2d 1123 (7th Cir.1988); *Duthu v. Sullivan,* 886 F.2d 97 (5th Cir.1989), *cert. denied Duthu v. Sullivan,* —— U.S. ——, 110 S.Ct. 3213, 110 L.Ed.2d 661 (1990); *Smith v. United States,* 850 F.2d 242 (5th Cir.1988); *Yang v. Immigration and Naturalization Service,* 574 F.2d 171 (3rd Cir.1978); *Hansen v. Harris,* 619 F.2d 942 (2d Cir.1980), *rev'd on other grounds by Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981).

**7.** The RTC asks this court to determine whether the Eleventh Circuit precedent has been over-

ruled *sub silentio* by *Richmond.* The court declines making such determination as estoppel does not lie against the RTC based upon the Eleventh Circuit test.

**8.** The *Baker* court used a regulatory/operational analysis to illustrate the sovereign/proprietary distinction.

**9.** Although plaintiffs claim a security interest in the Fund for the first time in their Motion for Summary Judgment, the Court will address the issue based on the fact that plaintiffs claim that their interest arises solely from the Agreement.

**1574**

the same status as a lien creditor and took priority over an unperfected security interest. Similarly, in *Casey v. Cavaroc*, 96 U.S. 467, 6 Otto 467, 24 L.Ed. 779 (1878), the Court found that a receiver of a national bank, appointed under provisions of the National Bank Act, has the status of a lien creditor. There can be no doubt that the RTC, as Receiver, has an interest to the Fund superior to any interest plaintiffs might have as lien creditors.

■ Alternatively, plaintiffs cannot possess a perfected security interest in the Fund as the facts are undisputed that they are not in possession of the assets in the Fund. The Uniform Commercial Code as adopted in Florida provides that a security interest is legally enforceable or "perfected" if the secured party possesses the collateral, or the debtor has signed a security agreement containing a description of the collateral; value has been given by the secured party; and the debtor has rights in the collateral. Fla.Stat. § 679.203; *Hartzog v. Dixon*, 366 So.2d 848, 850 (Fla. 1st DCA 1979). While it cannot be disputed that CenTrust possessed rights in the collateral, plaintiffs are hard pressed to satisfy the first two criteria of the three-pronged test.

Clearly, plaintiffs do not possess the assets in the Fund. And contrary to plaintiffs argument that the Second Amended Agreement constitutes a security agreement within the meaning of the statute, the Agreement actually *prohibits* the assets in the Fund from being "attachable or chargeable for the individual debts or obligations of the Bank or any of the [officers or directors]." Section 7(j), Second Amended Agreement. Plaintiffs' claim based on an enforceable security interest or equitable lien fails.

While relegating the plaintiffs' indemnification claims to the status of general unsecured creditors may give the appearance of unfairness, such seeming unfairness is endemic in bankruptcy. The question then is whether such status is any more unfair than that of anyone else providing goods and services to a corporation and not receiving full payment when the corporation goes bankrupt. *In re THC Financial Corp.*, 446 F.Supp. 1329, 1332 (D.Hawaii

1977). Plaintiffs here must first litigate the claims against them. If successful, plaintiffs may present such claims for indemnification along with CenTrust's other creditors.

ACCORDINGLY, Defendant RTC's Motion for Summary Judgment is GRANTED and Plaintiffs' Motion for Summary Judgment is DENIED.