**Gene RICE, Plaintiff,**

**v.**

**The RESOLUTION TRUST CORPORATION, as Receiver for MeraBank, Defendant.**

**No. CIV 91–62 PHX EHC.**

United States District Court,
D. Arizona.

March 6, 1992.

Sandra R. Kane, Jennings Strouss & Salmon and Raymond M. Hunter, Hunter & Lehman P.C., Phoenix, Ariz., for plaintiff.

John Howard Bernstein, Kutak Rock, Denver, Colo. and E. Scott Dosek, Kutak Rock & Campbell, Phoenix, Ariz., for defendant.

## ORDER

CARROLL, District Judge.

*Background*

Plaintiff was employed as MeraBank's Chief Executive Officer (CEO) from May, 1984 through January 31, 1990, when his employment was terminated by Defendant Resolution Trust Corporation (RTC). First Amended Complaint at para. 4. In 1982, plaintiff and MeraBank executed a "Salary Continuation Agreement"[1] (Agreement), which provides, in part, as follows:

*Continuation of Salary.* Upon termination of employment of employee, at any time after the last day of the calendar year Employee reaches the age of fifty-seven (57) years, the Employer shall pay the Employee, in monthly installments, an amount equal to seventy-five percent (75%), increased by five percent (5%) for each full year Employee is employed by Employer after the year in which Employee reaches age fifty-seven (57) with a maximum of one hundred percent (100%), of the average of the highest five (5) years base salary Employee has received during this employment divided by twelve (12), which amount shall be continued for a total of one hundred twenty (120) months.

Agreement at para. 2.

Plaintiff alleges that because he was employed by MeraBank for over two years after the year in which he reached the age of 57, he is entitled to receive 85 percent of the average of his highest five-year base salary payable in 120 monthly installments. First Amended Complaint at para. 7. The average of the highest five-year base salary plaintiff received is $421,088. Eighty-five (85) percent of that figure is $357,925. *Id.* at para. 8. Plaintiff claims that because defendant terminated his employment, he is entitled to 120 equal and consecutive monthly installments of $29,827 ($357,925 divided by 12) beginning on February 20, 1990. *Id.* at para. 9.

In addition, the Agreement provides that if plaintiff's employment is terminated "upon change in control of the management of" MeraBank, then plaintiff shall be paid the same benefits[2] as if he had reached normal retirement. *Id.* at para. 10 (*citing* Agreement at para. 3). The Agreement defines "change of control" as "the election of a majority of the Board of Directors consisting of persons other than those who were members of the Board of Directors during the year prior to the date of such election." *Id.* at Agreement para. 10.H.

Defendant terminated all of MeraBank's directors immediately upon its appointment as receiver on January 31, 1990. First Amended Complaint at para. 11. Plaintiff

---

1. *Id.* at Exhibit A.

2. Plaintiff alleges that "same benefits" means 100 percent of average base salary. First Amended Complaint at para. 10.

alleges that this constituted a "change in control" of the management of MeraBank, which entitles plaintiff to 100 percent of the benefits provided in the Agreement para. 2. Such benefits amount to 120 monthly installments of $35,091 ($421,088 divided by 12) beginning on February 28, 1990. *Id.*

Defendant, as receiver for MeraBank, has failed to make the payments to which plaintiff claims he is entitled. *Id.* at para. 13. Plaintiff alleges that because the payments are "wages" within the meaning of A.R.S. § 23–355, he is entitled to an amount treble the unpaid wages pursuant to A.R.S. § 23–355. *Id.* at para. 14. Plaintiff contends that he is also entitled to recover reasonable attorneys' fees. *Id.* at para. 15 (*citing* Agreement at para. 10.E).

*Defendant's Motion for Summary Judgment*

On October 1, 1991, defendant filed a motion for summary judgment on the issue of vesting. Defendant contends that the Salary Continuation Agreement upon which plaintiff bases his claims was terminated by operation of law pursuant to 12 C.F.R. § 563.39 upon the appointment of RTC as receiver for MeraBank on January 31, 1990. Motion at 2. Furthermore, defendant contends that plaintiff had no vested rights under the Agreement prior to the time it was terminated by operation of law and, therefore, plaintiff is not entitled to any penalties for unpaid wages pursuant to A.R.S. § 23–355. *Id.*

Specifically, defendant asserts that the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) authorizes the RTC to disaffirm or repudiate the contracts of a failed savings institution that are burdensome. *Id.* at 7 (*citing* 12 U.S.C. § 1821(e)). In addition, RTC claims it is relieved of obligations under employment contracts entered into by an institution, arguing that such contracts are automatically terminated at the time the institution (1) goes into default,[3] (2) enters into an assistance agreement with the Federal Deposit Insurance Corporation (FDIC) or RTC, (3) is the subject of a supervisory merger, or (4) is declared to be in an "unsafe or unsound condition." Motion at 7 (*citing* 12 C.F.R. § 563.39(b)(5)).

Section 563.39(b) provides, in pertinent part, as follows:

(b) *Required provisions.* Each employment contract shall provide that:

(4) If the savings association is in default (as defined in Section 2[3](x)(1) of the Federal Deposit Insurance Act),[4] all obligations under the contract shall terminate as of the date of default, but this paragraph (b)(4) shall not affect any vested rights of the contracting parties: *Provided,* that this paragraph (b)(4) need not be included in an employment contract if prior written approval is secured from the Director or his or her designee.

(5) All obligations under the contract shall be terminated, except to the extent determined that continuation of the contract is necessary of [sic] the continued operation of the association

(i) by the Director or his or her designee, at the time the Federal Deposit Insurance Corporation or Resolution Trust Corporation enters into an agreement to provide assistance to or on behalf of the association under the authority contained in 13(c) of the Federal Deposit Insurance Act; or

(ii) by the Director or his or her designee, at the time the Director or his or her designee approves a supervisory merger to resolve problems related to operation of the association or when the association is determined by the Director to be in an unsafe or unsound condition.

Any rights of the parties that have already vested, however, shall not be affected by such action.

---

**3.** *Id.* (*citing* 12 C.F.R. § 563.39(b)(4)).

**4.** Section 2[3](x)(1) of the Federal Deposit Insurance Act provides "that the term 'default' means, with respect to an insured depository institution, any adjudication or other official determination by any court of competent juris-diction, the appropriate Federal banking agency, or other public authority pursuant to which a conservator, receiver, or other legal custodian is appointed for an insured depository institution...." 12 U.S.C. § 1813(x)(1).

12 C.F.R. § 563.39(b)(4) and (5). Section 563.39(b) requires that each employment contract contain a term that recites the regulation, and, if not included, the term is read into the contract. Motion at 10 (*citing Wilde v. First Fed. Sav. and Loan Ass'n of Wilmette*, 134 Ill.App.3d 722, 89 Ill.Dec. 493, 496, 480 N.E.2d 1236, 1239 (1985)). The underlying purpose of the regulation was to terminate contracts negotiated by the failed institution in the past, which "bestow[ed] huge benefits on the very managers who were responsible for the bank's demise." Motion at 9 (*citing FSLIC v. Quinn*, 922 F.2d 1251, 1257 (6th Cir.1991)).

Defendant asserts that the Salary Continuation Agreement upon which plaintiff bases his claims is an "employment contract" for purposes of 12 C.F.R. § 563.-39(b), which terminated upon the declaration of the Office of Thrift Supervision (OTS) that MeraBank was insolvent and the appointment of RTC as its receiver. Motion at 13. The Agreement's paragraphs 2 and 3 provide benefits to plaintiff only upon the express condition of plaintiff's termination by change in control of management. *Id.* Defendant argues that because plaintiff's employment and the Agreement were terminated by operation of law upon the OTS's declaration of Mera-Bank's insolvency and the appointment of RTC as receiver, plaintiff had no vested rights under the Agreement at the time the Agreement was terminated. *Id.* at 13–14. Defendant cites *Rush v. FDIC*, 747 F.Supp. 575 (N.D.Cal.1990); *FSLIC v. Quinn*, 711 F.Supp. 366 (N.D.Ohio 1989); and *Wilde*, 89 Ill.Dec. at 493, 480 N.E.2d at 1236 in support of its motion.

In sum, defendant asserts that because plaintiff had no vested rights under the Salary Continuation Agreement at the time the Agreement was terminated, plaintiff is not entitled to the payments he seeks. Motion at 14. Moreover, because RTC, as receiver for MeraBank, is not obligated to make the claimed payments to plaintiff, plaintiff has no claim for benefits under A.R.S. § 23–355. *Id.* at 14–15.

5. *See* Original Complaint at Exhibit B.

*Plaintiff's Response and Cross–Motion for Summary Judgment*

Plaintiff responded to defendant's motion with a combined response and cross-motion for summary judgment. Plaintiff asserts that the Salary Continuation Agreement is a *retirement* contract and, as such, was not terminated by operation of law pursuant to 12 C.F.R. § 563.39 because that regulation applies only to *employment* contracts. Response at 1. Alternatively, plaintiff argues that if the Agreement is an employment contract within the meaning of the regulation, the appointment of the RTC as receiver for MeraBank did not terminate plaintiff's right to receive benefits because his rights had vested. *Id.* at 1–2.

Specifically, plaintiff maintains that for 12 C.F.R. § 563.39 to apply in this case, it must first be established that the Agreement is an "employment contract." *Id.* at 4. Plaintiff argues that because the term "employment contract" is not defined anywhere in the regulation or the underlying statute, the term must be interpreted according to its plain meaning. *Id.* at 5 (*citing Fagner v. Heckler*, 779 F.2d 541, 543 (9th Cir.1985)). Black's Law Dictionary (6th ed. 1990) defines an employment contract as "an agreement or contract between employer and employee in which the terms and conditions of one's employment are provided." Response at 5.

Plaintiff argues that the Agreement does not fit Black's definition because, although it relates to compensation *after* termination of employment or death, it is completely silent on terms and conditions *during* employment, such as job title, job duties, salary, and length of employment. Plaintiff submits that in this case, those terms are set forth in plaintiff's employment contract,[5] whereas the Salary Continuation Agreement is completely separate from and is not even cross-referenced or mentioned in the employment contract. Response at 5.

Plaintiff contends that the Agreement is typical of retirement type/deferred compensation plans or arrangements commonly

used to attract and retain qualified executives in the financial services industry and other businesses. *Id.* (*citing* Proposed Rules, Federal Deposit Insurance Corporation, 56 Fed.Reg. 50529–01 (October 7, 1991), at Appendix 4 to Statement of Facts). Consequently, plaintiff claims that the Agreement is governed not by 12 C.F.R. § 563.39, but rather by 12 C.F.R. § 563.47, which relates directly to pension, retirement, and related plans. Response at 5–6.

Plaintiff goes on to argue that § 563.47 contains no provision under which retirement benefits are automatically terminated by operation of law upon takeover by the RTC. *Id.* at 6. In addition to 12 C.F.R. § 563.47, the FDIC's proposed rules on "golden parachutes" demonstrate that automatic termination of retirement benefits does not occur. *Id.; see* Appendix 4 to Statement of Facts. Moreover, the fact that 12 C.F.R. § 563.39 never mentions retirement contracts, deferred compensation plans, or pension plans and instead exempts from termination "vested rights" indicates that § 563.39 is not intended to terminate such benefits. Response at 7.

Plaintiff submits that the RTC's claim that it repudiated the Agreement when it took control of MeraBank is further evidence that the Agreement did not terminate by operation of law under 12 C.F.R. § 563.39. *Id.* at 8. As receiver for Mera-Bank, the RTC clearly had authority to repudiate the Agreement pursuant to 12 U.S.C. § 1821(e)(1). However, plaintiff claims he is entitled to compensatory damages from the RTC as a result of its repudiation of the Agreement pursuant to 12 U.S.C. § 1821(e)(3). Section 1821(e)(3) states, in pertinent part, as follows:

> [T]he liability of the conservator or receiver for the disaffirmance or repudiation of any contract pursuant to paragraph (1) shall be—
>
> (i) limited to actual direct compensatory damages; and
>
> (ii) determined as of—
>
>> (I) the date of the appointment of the conservator or receiver;....

In light of 12 U.S.C. § 1821(e)(3), plaintiff acknowledges that his state law claim for treble the amount of unpaid wages under A.R.S. § 23–355 may not be enforceable. Response at 8, n. 6.

Plaintiff states that the amount of compensation to which he is entitled for breach or repudiation of the Agreement depends upon whether his employment was terminated under paragraph 2 or paragraph 3 of the Agreement. *Id.* at 9. Plaintiff maintains that his termination resulted from a change in control of management within the meaning of paragraph 10.H. of the Agreement. Consequently, plaintiff asserts that he is entitled to receive 120 installments of $35,091. *Id.*

In the event the Court determines that the Agreement is an employment contract and, thus, subject to 12 C.F.R. § 563.39, plaintiff contends that his rights were not terminated by operation of law because he had a vested right to retirement benefits. *Id.* at 9–10. Because the term "vesting" is not defined in 12 C.F.R. § 563.39 or in any related regulations, plaintiff relies on the definition of "vested rights" in Black's Law Dictionary (6th ed. 1990). Although the retirement benefits contained in the Agreement are not subject to ERISA and ERISA does not expressly define "vesting," plaintiff also urges that the ERISA definition of "nonforfeitable" is instructive. *Id.* at 11 (*citing* 29 U.S.C. § 1002(19); Appendix 5 to Statement of Facts).

Finally, plaintiff asserts that the three cases cited by defendant for the proposition that vesting does not occur prior to termination of an employment contract by operation of law under 12 C.F.R. § 563.39 are not persuasive. *Id.* at 13.

*Discussion*

 I conclude that the Salary Continuation Agreement is an employment contract governed by 12 C.F.R. § 563.39(b). The Agreement set forth the general terms and conditions of plaintiff's employment. *See* Salary Continuation Agreement at para. 1 ("... Employee agrees to maintain no other employment, ..."); at para. 7 (covenant not to compete); at para. 8 (employer's right to discharge employee); at para. 9

(defines "other benefits")). Under the plain meaning of its terms, the Salary Continuation Agreement is an "employment contract" "in which the terms and conditions of [plaintiff's] employment are provided." *See* Black's Law Dictionary (6th ed. 1990). Moreover, it was the only agreement that governed plaintiff's employment while at MeraBank. The Employment Agreement[6] was entered into on May 7, 1984 to become effective *only* upon a "change in control" of MeraBank as defined in the agreement. The Employment Agreement stated, in pertinent part, as follows:

> The Association hereby agrees to employ Executive, and Executive hereby agrees to serve the Association on the terms and conditions set forth herein for a period of five years, *commencing upon the occurrence of a "change in control" of the Association,* as defined in Paragraph 6 below. Such period is sometimes referred to herein as the "term" of this Agreement.

Original Complaint at Exhibit B, para. 1 (emphasis added). Although the Employment Agreement described terms and conditions of plaintiff's employment, none of these conditions governed plaintiff's employment while he worked at MeraBank. MeraBank did not experience a "change in control" in management during plaintiff's employ; therefore, the "term" of the agreement never commenced.

■ Given that the Salary Continuation Agreement is an employment contract within the meaning of 12 C.F.R. § 563.-39(b), the only remaining question is whether plaintiff's benefits vested prior to the RTC's appointment as receiver of Mera-Bank and the termination of all MeraBank employment contracts, including plaintiff's Salary Continuation Agreement. The case law offered by defendant constrains this Court to find that plaintiff's benefits had not vested prior to termination of the Agreement.

In *Rush,* the Federal Home Loan Bank Board (FHLBB) appointed the FSLIC as receiver for Centennial Savings & Loan (Centennial), converting Centennial into a federally chartered savings and loan. *Rush,* 747 F.Supp. at 577. Thereafter, Centennial contracted with Great Western Bank to provide a management team for Centennial. Centennial hired the plaintiff, a former Great Western employee, as chief operating officer on the management team. *Id.*

The plaintiff alleged that approximately 18 months later, when rumors circulated that Centennial's liquidation was imminent, he entered into a written severance agreement with Centennial's chief executive officer, which guaranteed the plaintiff one year's salary in the event that his employment was terminated by Centennial for any reason other than "good cause." *Id.* Approximately one month thereafter, the FHLBB declared Centennial insolvent and appointed the FSLIC as receiver for the purpose of liquidating Centennial's assets. Further, the FHLBB announced the termination of all outstanding employment contracts with Centennial, pursuant to 12 C.F.R. § 563.39,[7] the same regulation at issue in this case. Plaintiff filed suit to enforce the severance agreement.

First, the court determined that the severance agreement was terminated because "[u]nder 12 C.F.R. § 563.39(b)(5), all obligations under employment contracts between an FSLIC insured institution and its employees are terminated by operation of law when the FHLBB determines that the institution is in an unsafe or unsound condition." *Id.* Second, the court addressed the issue of whether the severance agreement had vested prior to the FHLBB declaring Centennial insolvent. The court applied federal common law and relied upon *Wilde* and *Quinn* to grant the defendants' motion to dismiss the plaintiff's complaint for failure to state an actionable claim. *Id.* at 578.

As the *Rush* court stated, the plaintiffs in both *Wilde* and *Quinn* sued for severance benefits under contracts terminated pursuant to Section 563.39, alleging that their rights under the contracts had vested

---

**6.** *See* Original Complaint at Exhibit B.

**7.** *Id.*

before termination. Like the severance agreement in *Rush*, the contracts in *Wilde* and *Quinn* provided for benefits if termination occurred without cause. The courts in both *Wilde* and *Quinn* found that the plaintiffs' rights had not vested, but were terminated by operation of law. *Id.*

In *Wilde*, the court reasoned that "termination without cause" was a condition precedent to vesting of the agreement. Because the plaintiff's contract expired by operation of law prior to the actual termination of his employment, vesting could not have taken place. *Id.* (*citing Wilde*, 89 Ill.Dec. at 499, 480 N.E.2d at 1242).

In *Quinn*, the court resorted to federal common law involving ERISA to determine the definition of vesting. Under ERISA, the term "vested" has been defined to mean an *unconditional* claim arising from a plan participant's service. Because the plaintiff was terminated by operation of law prior to the triggering event of "termination without cause," his right was conditional and, accordingly, not vested. *Rush*, 747 F.Supp. at 578 (*citing Quinn*, 711 F.Supp. at 379).

The *Rush* court stated that although it was not bound by the *Wilde* and *Quinn* precedents, "they are well-reasoned in light of the policy underlying Section 563.39." *Rush*, 747 F.Supp. at 578. The court also stated:

> This regulation is necessary to relieve a troubled or insolvent savings and loan institution from burdensome obligations such as substantial contracts for severance pay. The interpretation that plaintiff urges—that severance agreements vest upon formation—denies the FSLIC the flexibility it required to manage unsound savings and loan associations.

*Id.*

Like the agreements in *Rush, Wilde,* and *Quinn*, the Salary Continuation Agreement in this case was terminated by operation of law pursuant to 12 C.F.R. § 563.39(b). *See Rush*, 747 F.Supp. at 577; *Quinn*, 711 F.Supp. at 379; *Wilde*, 89 Ill.Dec. at 499, 480 N.E.2d at 1242. The Agreement was terminated upon the appointment of RTC as receiver for MeraBank on January 31, 1990. Furthermore, because plaintiff's Agreement expired by operation of law prior to the occurrence of the condition precedent of termination of plaintiff's employment without cause, vesting could not have taken place. *See Rush*, 747 F.Supp. at 578; *Wilde*, 89 Ill.Dec. at 499, 480 N.E.2d at 1242.

Plaintiff attempts to distinguish *Quinn* by pointing out that the Sixth Circuit reversed and remanded the district court's decision. *Id.* Although the Sixth Circuit did vacate the district court's decision and remand the case, the Sixth Circuit expressly stated that "[i]t [was] unnecessary for [them] to reach the question of whether Quinn and Gannon's rights under the employment contracts were 'vested' within the meaning of section 563.39(5)" because the Sixth Circuit found an exception to automatic termination of the contracts applicable. *Quinn*, 922 F.2d at 1257. In other words, the Sixth Circuit did not analyze, let alone criticize, the district court's reasoning on the vesting issue; the Sixth Circuit never reached that issue.

Plaintiff argues that *Wilde* is not persuasive authority because the court stated that it was unnecessary to consider the vesting issue because the plaintiff had waived it by failing to raise it in the court below. Response at 13 (*citing Wilde*, 89 Ill.Dec. at 499, 480 N.E.2d at 1242). Plaintiff is correct in asserting that the *Wilde* court's analysis of the vesting issue is presumably dicta; the court prefaced its discussion of the issue by stating, "Notwithstanding this waiver, his argument is without merit." *Wilde*, 89 Ill.Dec. at 499, 480 N.E.2d at 1242. Nevertheless, the analysis is persuasive and was followed by the courts in both *Quinn* and *Rush*.

Plaintiff also argues that this Court should not follow *Wilde* or *Rush* because under the reasoning of those decisions, vested rights to retirement benefits could *never* exist under 12 C.F.R. § 563.39(b)(1), and the exception for vested rights which is repeatedly set forth in that regulation would be rendered meaningless. Response at 13. Pursuant to § 563.39(b)(1), each employment contract is required to provide,

1392

among other things, that "[t]he officer or employee shall have no right to receive compensation or other benefits for any period after termination for cause." Thus, asserts plaintiff, the right to receive post-employment benefits is contingent upon termination without cause in *every employment contract* that is subject to § 563.39. *Id.* at 14.

Plaintiff maintains that if the Court follows *Wilde* and *Rush*, every termination of an association's obligations under an employment contract pursuant to § 563.39 would occur *prior* to the purported condition precedent of termination of employment without cause, and the employee's rights to retirement and other post-termination benefits would never vest and would always be extinguished. *Id.* Plaintiff asserts that this result is inequitable, unjust, and gives no meaning to the express language of § 563.39(b)(4) and (5) preserving vested rights of parties.

Plaintiff states that a statute or regulation should be interpreted so as not to render one part inoperative. *Id.* (*citing Colautti v. Franklin*, 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979); *Beisler v. Commissioner of Internal Revenue*, 814 F.2d 1304 (9th Cir.1987); *United States v. Handy*, 761 F.2d 1279 (9th Cir.1985)). Accordingly, plaintiff contends, termination without cause was not a condition precedent to the vesting of his benefits under the Agreement. Response at 14. Plaintiff maintains that his rights were vested and, therefore, he is entitled to the payments he claims. *Id.*

Plaintiff is mistaken when he states that under *Wilde* and *Rush*, vested rights to retirement benefits could *never* exist under § 563.39(b). Plaintiff's contention is only true under circumstances where the employee's right to benefits under a severance agreement accrue simultaneously with termination of the agreement. Under such circumstances, there exist no vested rights prior to termination of the agreement because the employment agreement is terminated by operation of law at the same time the right to benefits accrue.

In this case, plaintiff could have had "vested" rights under the Agreement that would not have been terminated had he retired early, died, or been terminated for reasons other than for cause at any time *before* January 31, 1990 when the RTC took over MeraBank. In addition, a different severance agreement could provide an employee with vested benefits before the agreement is terminated, such as an agreement that provides that an employee's right to benefits accrues after 10 years of service and those benefits survive a termination of employment. *See, e.g., Nachman Corp. v. Pension Ben. Guaranty Corp.*, 446 U.S. 359, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980).

Accordingly,

IT IS ORDERED that defendant's motion for summary judgment (docket # 20) is granted.

IT IS FURTHER ORDERED that plaintiff's cross-motion for summary judgment (docket # 24) is denied.

IT IS FURTHER ORDERED that judgment be entered that plaintiff take nothing by reason of this action.