**Jacqueline and Crescent FRESCA, Plaintiffs,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Receiver for the Seamen's Bank for Savings, Defendant.**

**No. 91 Civ. 3624 (LBS).**

United States District Court, S.D. New York.

April 16, 1993.

The Straniere Law Firm, Staten Island, NY (Robert A. Straniere, of counsel), for plaintiffs.

Barnes, McGhee, Neal, Poston & Segue, New York City (Cesar V. Ottey, of counsel), for defendant.

1. At oral argument, the FDIC argued that this clause meant that the FDIC reserved the right to unilaterally cancel all benefits. We find such an

OPINION

SAND, District Judge.

This action is brought by Jacqueline Fresca and her husband, Crescent Fresca, against the FDIC as receiver for Seamen's Bank for Savings (the "Bank"), under 12 U.S.C. § 1821, the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), challenging the repudiation of benefits under an Enhanced Retirement Program ("ERP"). Currently before the Court are cross-motions for summary judgment. Because we find that plaintiffs have proven entitlement to the value of the benefits under the ERP as a matter of law, their summary judgment motion is granted as to liability. Defendant's summary judgment motion is denied. Because the Court has not been presented with information sufficient to fashion damages, we will refer to a magistrate judge for hearing on that issue only.

*Factual Background*

The facts are undisputed and are as follows. Plaintiff, Jacqueline Fresca, was employed by Seamen's Bank for Savings for approximately thirty-six years when, in mid-March, 1989, she was offered an early retirement package, entitled "Enhanced Retirement Program". The plan, which provided benefits for both Jacqueline and her husband, appears to have been an incentive to employees to take early retirement in an effort to conserve funds for the Bank.

The ERP provided two advantages over the regular retirement plan: (1) an increase in monthly benefits or a long-service award, and (2) a retirement bonus. The medical and life insurance benefits under the ERP and the regular retirement program appear to be the same. The section on medical benefits notes that "the bank reserves the right to review its medical plan and make changes from time to time."[1]

Plaintiff and others in her position were given a very short time to make the decision whether to accept early retirement. The

interpretation untenable and do not address it further.

window of opportunity was from March 16, 1989 to April 21, 1989, with retirement to take effect on May 1, 1989. Plaintiff accepted the program, and retired on May 1, 1989.

On April 18, 1990, almost a full year after plaintiff's retirement, the Bank was declared insolvent and the FDIC was appointed as receiver. Pursuant to the requirements of 12 U.S.C. § 1821, plaintiff submitted a proof of claim to the FDIC for the value of medical and life insurance benefits under the ERP, which claim was denied. Plaintiff was advised by the FDIC on October 3, 1990 that her claim was disallowed because "after the Seamen's Bank for Savings was declared insolvent, the medical and life insurance benefits provided to employees were cancelled." There is no claim advanced by the FDIC that plaintiff's benefit arrangement was collusive, in anticipation of the bank's insolvency or that it was in any way tainted.

Plaintiff has properly exhausted her administrative remedies, and brings this action seeking a declaratory judgment mandating the continuation of the benefit plan under the contract, or, alternatively, the value of the medical and life insurance benefits under the plan. Plaintiff does not challenge her pension benefits or the retirement bonus, and we assume that those obligations have been or are being met according to the terms of the contract.

## Discussion

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the supporting evidence demonstrates that there are no genuine issues of material fact in dispute and that the movant is entitled to judgment as a matter of law. A court does not resolve disputed issues of fact, but rather, resolving any ambiguities and drawing all reasonable inferences against the moving party, assesses whether genuine issues of material fact remain for the trier of fact. *See, e.g. Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

The liability aspect of this case is particularly suited to a determination on motion for summary judgment, because what is in dispute is entirely a matter of interpretation of the FIRREA statute. The FDIC contends that it has broad power under the law to repudiate contracts which are deemed burdensome, and that plaintiff's contract falls into this category. Plaintiff argues that the statute does not confer power to repudiate contracts where a party's rights have vested. The answer, we believe, lies somewhere in between.

Although both parties frame the question as whether the FDIC has the power to repudiate this contract under 12 U.S.C. § 1821(e), we must in fact examine three different, but related, questions, to discern the overall mechanism of how FIRREA works in relation to contracts entered into before the appointment of a receiver. First, does an employment contract of the type at issue here automatically terminate under the regulations promulgated pursuant to FIRREA, codified at 12 C.F.R. § 563.39? Second, what does it mean to repudiate a contract under 12 U.S.C. § 1821(e), and does that power extend to executory and non-executory contracts alike? Finally, if the FDIC does have the power to repudiate the contract, may it do so with impunity, or are there damages available to plaintiffs under 12 U.S.C. § 1821(e)(3)? We address each question in turn.

### A. *Regulations regarding employment contracts under 12 C.F.R. § 563.39:*

The FDIC argues that plaintiff's contract was terminated by operation of law under 12 C.F.R. § 563.39(b)(5)(ii) when the FDIC was appointed as receiver on April 18, 1990. The regulation, which governs employment contracts, provides in relevant part:

> All obligations under the contract shall be terminated ... by the Director or his or her designee ... when the association is determined by the Director to be in an unsafe or unsound condition.

> Any rights of the parties that have already vested, however, shall not be affected by such action.

The FDIC relies on two cases to support its position that the ERP constitutes an employment contract which was automatically

terminated pursuant to this regulation upon the appointment of the receiver. An examination of those cases however reveals that those plaintiffs, in contrast to Ms. Fresca, did not have vested rights under the contracts at the time of the insolvency of the banks. That factor is clearly critical under the regulation.

In *Rice v. Resolution Trust Corp.*, 785 F.Supp. 1385 (D.Ariz.1992), plaintiff was the CEO of the failed bank. The contract at issue was a "Salary Continuation Agreement", which provided that if the plaintiff were terminated after reaching the age of 57, he would receive a certain percentage of his salary for five years. The agreement further provided that if the plaintiff's employment was terminated upon change in control of the management of the Bank, he would receive the same benefits as if he had reached normal retirement. Plaintiff was terminated by the RTC as soon as it was appointed receiver. Plaintiff argued that this was termination by "change in control" and claimed the benefits under the agreement; the RTC refused to pay those benefits.

In *Rice*, as in the case before this Court, the defendant argued that plaintiff's contract was terminated by operation of law pursuant to the regulation. The court found that the contract, although dealing with matters of termination, was an employment contract, because it set out the terms and conditions of plaintiff's employment. The court further held that plaintiff's rights had not vested at the time of the appointment of the RTC, because a condition precedent to those rights, the "change in control", had not occurred at the point in time when the bank was declared insolvent. Therefore, the contract terminated by virtue of the statute at the time of the appointment of the RTC, and the plaintiff had no rights under it. As the *Rice* court explained:

> In this case, plaintiff could have had "vested" rights under the Agreement that would not have been terminated had he retired early, died, or been terminated for reasons other than for cause at any time *before* January 31, 1990, when the RTC took over MeraBank.
> 785 F.Supp. at 1392.

Similarly, in *Rush v. Federal Deposit Ins. Corp.*, 747 F.Supp. 575 (N.D.Cal.1990), the other case upon which defendant relies, the court held that a severance agreement which provided the plaintiff with one year's salary upon termination without cause had not vested at the time the FDIC was appointed as receiver of the bank. Because the condition precedent, termination without cause, had not occurred prior to the appointment, the employment contract was terminated by operation of the regulation. The court looked to cases decided under ERISA to define "vested", and determined that the term "has been defined to mean an *unconditional* claim arising from a plan participant's service." 747 F.Supp. at 578.

■ An analysis of these cases and the regulation reveals that plaintiff Fresca's contract was not terminated as a matter of law under the regulation. First of all, it is by no means obvious that the ERP would qualify as an employment contract under the regulation at all. It does not set out the terms of plaintiff's employment, nor does it envision the continued employment of plaintiff until some event occurs in the future. To the contrary, the ERP required plaintiff's almost-immediate retirement.

However, even assuming that the ERP is an employment contract, we find that plaintiff's rights were vested at the time that the FDIC was appointed receiver. In contrast to *Rice* and *Rush*, there is no condition precedent which has not been fulfilled by plaintiff. In order for plaintiff's rights to the medical and life insurance coverage to vest under the ERP, plaintiff was required to choose to become a part of the program, and to retire. Plaintiff complied with those requirements almost a year before the FDIC was appointed. As the *Rice* court explained in the portion of the decision quoted above, this is the precise situation in which the rights vest and the regulation is non-operational.

This brings us to the second question, whether the FDIC has the power to repudiate the plaintiff's contract under 12 U.S.C. § 1821(e).

### B. *FDIC's Power to Repudiate Contracts under 12 U.S.C. § 1821(e):*

The FDIC argues that it has the power under 12 U.S.C. § 1821(e) to repudiate any and all contracts, whether executory or non-executory, regardless of whether rights have vested. Significantly, defendant cites no case to the Court where a contract involving vested rights was repudiated, and we find such a reading of the statute draconian. However, because the result is the same if we find that the FDIC could not repudiate, or if we find that the FDIC can repudiate but must pay damages, we do not need to reach the broad question of the extent of the FDIC's power to repudiate non-executory contracts.

The section in question provides as follows:
(e) Provisions relating to contracts entered into before appointment of conservator or receiver

(1) Authority to repudiate contracts
In addition to any other rights a conservator or receiver may have, the conservator or receiver for any insured depository institution may disaffirm or repudiate any contract or lease—
(A) to which such institution is a party;
(B) the performance of which the conservator or receiver, in the conservator's or receiver's discretion, determines to be burdensome; and
(C) the disaffirmance or repudiation of which the conservator or receiver determines, in the conservator's or receiver's discretion, will promote the orderly administration of the institution's affairs.

The FDIC argues, correctly, that the statute on its face is not limited to executory contracts, that is, contracts where rights of the parties have not vested. Nevertheless, that does not end the inquiry.

■ First, we note that the language of the statute, specifically the use of the terms "disaffirm" and "repudiate", is not without legal significance. Both terms suggest a stage of the contract where performance on the part of the FDIC is not yet due. In other words, repudiation entails an *anticipatory* breach, taking place before the triggering event occurs which would cause the other party's rights to vest. Black's dictionary defines "disaffirm" as "to repudiate". Black's Law Dictionary 462 (6th Ed.1990). Black's defines repudiation of contracts:

Repudiation of contract is in the nature of anticipatory breach before performance is due, but does not operate as anticipatory breach unless [the] promisee elects to treat repudiation as breach, and brings suit for damages. Such repudiation is but [an] act or [a] declaration in advance of any actual breach and consists usually of [an] absolute and unequivocal declaration or act amounting to [a] declaration on [the] part of [the] promisor to [the] promisee that he will not make performance on future day at which contract calls for performance.

*Id.* at 1303.

■ Although we have not found any cases which directly discuss whether the FDIC can repudiate contracts where rights have vested, we note that the cases which defendant has cited all involve contracts where the rights have not vested, such as the severance contracts at issue in *Rice* and *Rush.* In *Office and Professional Employees Int'l Union v. Federal Deposit Ins. Corp.,* 813 F.Supp. 39, 41 (D.D.C.1993), the court, again considering a severance contract where the triggering event, termination for economic reasons, had not occurred prior to the appointment of the FDIC as receiver, stated:

The Plaintiffs have not cited, nor has the Court discovered, any reference in the statute or its legislative history to the issue of bank employee benefits or to any possible exception to the general powers of a receiver to repudiate the contracts of an insolvent institution when employee benefits are concerned. Consequently, the Court cannot construct such an exception in this case.

Therefore, while it is certainly clear that employee benefit programs are not immune from the broad repudiation powers of the FDIC, it is far from apparent that the FDIC could repudiate a contract once those employee benefit rights have vested.[2]

**2.** An examination of the legislative history reveals that this section of FIRREA was "closely

A similar question was discussed, if not definitively resolved, in *Gibson v. Resolution Trust Corp.*, 750 F.Supp. 1565 (S.D.Fla.1990). In that case, the RTC repudiated a contract between the failed bank, CenTrust, and a law firm which CenTrust had retained to represent its officers and directors. The contract allocated some eleven million dollars to provide for legal fees and to pay damage claims on behalf of the officers and directors. The FDIC argued that any contract is subject to repudiation under § 1821(e), and the plaintiff countered that the FDIC's power extends only to executory contracts. Because the court in *Gibson* found the contract at issue executory, it did not decide the broader question of the FDIC's power. However, the court's discussion of the question is illuminating.

The court noted that there is disagreement as to the definition of "executory contract", but that the Supreme Court "has found that reciprocal remaining obligations characterize an executory contract." 750 F.Supp. at 1569. Because the law firm still owed the obligation of performing legal services before the bank would be required to pay for those services under the contract, the contract was held to be executory, and therefore subject to repudiation.[3] The court specifically left open the question of whether the FDIC can repudiate a contract where the other party has fully performed, which is precisely the situation at hand.

We turn for a moment to the practical consequences of a decision that the FDIC does not possess the power under the statute to repudiate this contract. The result would be a declaratory judgment that the plaintiffs are still covered by the contract and shall receive the medical and life insurance benefits to which they are entitled. Because plaintiffs would receive an equivalent damage award, the value of obtaining equivalent coverage, if we find that the FDIC did in fact have the power to repudiate the contract, we do not need to decide the broader question, and we decline to do so. We address the third related question, that of damages under FIRREA.

### C. Damages for Repudiation of Contracts:

The final question we examine allows us to resolve this motion on the most narrow grounds.

 Defendant appears to suggest in its brief, by its silence on the question of damages, that the FDIC may repudiate contracts without liability. To the contrary, the statute, although strictly limiting the nature of damages which may be recovered, specifically provides for compensatory damages for breach of contract.

The relevant portions of the provision read as follows:

(3) Claims for damages for repudiation

(A) In general

... the liability of the conservator or receiver for the disaffirmance or repudiation of any contract pursuant to paragraph (1) shall be—

(i) limited to actual direct compensatory damages; and

(ii) determined as of—

(I) the date of the appointment of the conservator or receiver; ...

(B) No liability for other damages

modeled on parallel provisions of Section 365 of the Bankruptcy Code." Senate Report, 135 Cong.Rec. S6907–1, 6911. Section 365 of the Bankruptcy Code gives the trustee in bankruptcy the power to repudiate "executory contracts and unexpired leases." In the bankruptcy context, an executory contract is defined as "a contract under which performance remains due to some extent on both sides." *RLR Celestial Homes, Inc.*, 108 B.R. 36, 44 (S.D.N.Y.1989). The legislative history therefore is ambiguous. It suggests either that Congress created this section based on the Bankruptcy Code and therefore intended that repudiation of contracts under FIRREA only apply to executory contracts, or that Congress

intentionally left out the term "executory" in the FIRREA statute as opposed to including the term as it did in the Bankruptcy Code. Since we are not required by the facts of this case to decide the ultimate question of whether § 1821(e) applies only to executory contracts or to all contracts, we will not pursue the legislative history arguments any further.

3. The *Gibson* court did award damages in the amount of fees already earned at the time the receiver was appointed. The right to those fees had already vested.

For purposes of subparagraph (A), the term "actual direct compensatory damages" does not include—

(i) punitive or exemplary damages;

(ii) damages for lost profits or opportunity; or

(iii) damages for pain and suffering.

The case law reflects the understanding that Congress intended that while the FDIC would have the power to repudiate contracts, it would also be obligated to compensate a party for those damages which flow directly from the repudiation.

In *Office and Professional Employees Int'l, supra,* 813 F.Supp. at 43, the court explained:

A receiver may not repudiate a contract with impunity. The receivership will be liable for damages caused by the repudiation, but that liability will be "limited to actual direct compensatory damages ..."

§ 1821(e)(3)(A)(i).

The First Circuit has recently examined the propriety of damages under FIRREA and the decision provides guidance in the case before this Court. In *Howell v. FDIC,* 986 F.2d 569 (1st Cir.1993), the plaintiffs were former officers of a failed bank who had entered into severance contracts which provided for certain payments if the employees were terminated. Some time later, the bank failed, and the FDIC was appointed receiver. Two months thereafter, the officers were terminated by the FDIC. The FDIC refused to honor the severance contracts, and the plaintiffs sued.

Once again, the first line of attack by plaintiffs was to challenge the FDIC's power to repudiate the severance contracts. The court confirmed this power, explaining:

The power of a receiver to repudiate prior executory contracts made by the debtor, a familiar incident of bankruptcy law, see 11 U.S.C. § 365 (executory contracts and unexpired leases), means something less than might appear. By repudiating the contract the receiver is freed from having to comply with the contract [citation omitted], but the repudiation is treated as a breach of contract that gives rise to an ordinary contract claim for damages, if any.

986 F.2d at 571.

The question before the *Howell* court was whether the damages claimed, the severance payments under the contract, were the type of damages contemplated by the statute. The court first noted that the term "actual direct compensatory damages" appeared to have been "plucked out of the air by Congress", *id.* at 572, and furthermore that there was no illuminating legislative history or precedent to be found.

The court concluded that the payments, although easily measured, were not compensatory in nature, but instead represented "an estimate of likely harm made at a time only prediction is possible." *Id.* at 573. The court likened the severance payments to liquidated damages, the purpose of which is to protect the party from possible losses flowing from employment opportunities foregone. Perhaps, the court reasoned, the plaintiffs had actually suffered no loss at all by staying at the bank instead of pursuing other employment. The nature of the severance payments were therefore not compensatory, but instead damages for lost opportunity, a category of damages not allowed by FIRREA.

But Ms. Fresca stands in an entirely different position than the plaintiffs in the severance contract cases. Under her contract, the ERP, three basic categories of benefits were provided: (1) the increased pension payments or long-service award; (2) the retirement bonus; and (3) the *standard* medical and life insurance benefits offered to all retirees. It could be argued that the first two categories are akin to the severance payments: they are payments which in some manner take into account how much longer the retiree might have worked, and seek to compensate the retiree for the loss incurred by not continuing the employment. However, plaintiffs do not sue for the value of those benefits.

Plaintiffs sue only to recover the value of the medical and life insurance benefits. Those benefits did not take into account any speculative or contingent losses arising from plaintiff's early retirement; they are the same benefits which Ms. Fresca and her

husband would have been entitled to receive upon regular retirement, or upon termination by the FDIC when it was appointed receiver.

We conclude that damages in the amount of the value of the medical and life insurance coverage are actual compensatory damages for the loss suffered by plaintiffs when the contract was repudiated. These damages fall within the prescribed limits set by Congress. They do not represent punitive damages, damages for lost opportunity or profits, or damages for pain and suffering.

However, as noted above, the parties have presented insufficient information to the Court regarding the value of these benefits, or suggesting what sum is necessary to obtain equivalent coverage independently. Plaintiffs have attached to their complaint the claim they made in the administrative proceeding; however, defendant has not addressed the appropriateness of the amounts plaintiffs suggest. The question of damages therefore cannot be resolved on a motion for summary judgment, and will have to await further proceedings.[4]

### Conclusion

For the reasons stated above, the plaintiffs' motion for summary judgment is granted as to liability. Defendant's motion for summary judgment is denied. We will refer to a magistrate judge to conduct a hearing on the question of damages.

SO ORDERED.

---

4. Because we resolve plaintiffs' claims under FIRREA, we do not address plaintiffs' claim that the FDIC is collaterally estopped from breaching the contract. However, we note that estoppel is not available, as a general rule, against the United States. *Howell, supra,* 1993 WL 32456 at *6.