**In the Matter of the Interpleader Between WESTPORT BANK & TRUST COMPANY**

**v.**

**M. James GERAGHTY, Federal Deposit Insurance Corp. and Norman M. Steere.**

**Civ. No. 5:91CV755 (WWE).**

United States District Court, D. Connecticut.

Sept. 29, 1994.

**84**

On May 19, 1994, this Court issued a recommended ruling by which it granted the FDIC's motions for summary judgment. However, at the request of M. James Geraghty and Norman M. Steere, the Court vacated that recommended ruling on May 24, 1994 so that any party wishing to file a reply brief could do so on or before June 22, 1994. On June 23, 1994, Geraghty and Steere filed a reply memorandum in further opposition to the FDIC's motions. Upon full consideration of this reply brief and the other submissions of the parties, and for the reasons set forth below, the FDIC's motions for summary judgment (# 46, 51) are GRANTED, and Steere's and Geraghty's motions for summary judgment (# 60, 65) are DENIED.

Gale Kosto, Leete, O'Neill & Kosto, Hartford, CT, for FDIC.

Jonathan Orleans, Zeldes, Needle & Cooper, Bridgeport, CT, for Norman M. Steere and M. James Geraghty.

EGINTON, Senior District Judge.

After de novo review, and over objection, the ruling of the Magistrate Judge is hereby ADOPTED, RATIFIED, and AFFIRMED.

*AMENDED RECOMMENDED RULING ON PENDING MOTIONS FOR SUMMARY JUDGMENT*

(# 46, 51, 60, 65)

EAGAN, United States Magistrate Judge.

The now dismissed stakeholder in this interpleader action, Westport Bank & Trust Company, was the trustee of three trusts funded by Citytrust to secure severance benefits contained in two employment agreements negotiated by Citytrust shortly prior to the Federal Deposit Insurance Corporation's appointment as its receiver. The claimants, the Federal Deposit Insurance Corporation, as Receiver of Citytrust (hereinafter "FDIC"), and former Citytrust employees, M. James Geraghty and Norman M. Steere, have filed motions for summary judgment in which they argue their respective entitlement to the trust funds.

*Background*

A party filing a motion for summary judgment has the initial responsibility of informing the Court of the basis for its motion for summary judgment and of identifying those parts of the record it believes demonstrate the absence of a genuine issue of material fact. *See Latimer v. Smithkline and French Laboratories,* 919 F.2d 301, 303 (5th Cir.1990) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Where, as here, a motion for summary judgment is supported by affidavits and other documentary evidence, the party opposing that motion must set forth specific facts showing that there is a genuine, material issue for trial. *See King Service, Inc. v. Gulf Oil Corp.,* 834 F.2d 290, 295 (2d Cir. 1987). Accordingly, because there are cross motions for summary judgment pending, each of the claimants herein must come forward with enough evidence to support a verdict in his favor. He cannot defeat his opponent's motion by merely presenting a metaphysical doubt, conjecture or surmise concerning the facts. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). "Only disputes over facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Upon review of the submissions of the parties, the Court finds the following undisputed, material facts. *See* Local Rule 9(c). On October 17, 1990, Citytrust, the FDIC and the Banking Commissioner of the State of Connecticut entered into a Memorandum of Understanding wherein the parties addressed the precarious financial condition of Citytrust. Without objection from the FDIC, on December 5, 1990, Citytrust and its holding company, Citytrust Bancorp, Inc. entered into an employment agreement with Norman M. Steere, effective November 5, 1990 through December 31, 1992, whereby Mr. Steere would serve as Citytrust's President and Chief Executive Officer. It was anticipated that Steere would be able to lead Citytrust out of its financial problems.

Meanwhile, M. James Geraghty, a long-time employee of Citytrust and Senior Executive Vice President in Charge of Citytrust's Special Asset Management Division, became concerned about the bank's future and advised bank officials that he would seek other employment unless his position with the bank could be assured. Thus, on or about December 7, 1990, Citytrust, through its new President and Chief Executive Officer Norman Steere, and Geraghty entered into a new employment agreement with a two year term.

Pursuant to Steere's employment agreement, Citytrust established a "secular trust" and a "rabbi trust" at Westport Bank & Trust, each funded in the amount of $350,000. Likewise, pursuant to Geraghty's employment agreement, Citytrust established a trust funded in the amount of $185,000. The purpose of the trusts was to secure severance payments in the event of a termination of Steere's or Geraghty's employment other than for cause.

On August 9, 1991, Citytrust was declared insolvent, and the FDIC was appointed its receiver. At that time or shortly thereafter, Geraghty was notified that his employment with Citytrust had been terminated. By a letter dated August 12, 1991, the FDIC notified Westport Bank & Trust that it was repudiating the trusts to which Steere and Geraghty were named beneficiaries. Likewise, by letters dated August 21, 1991, the FDIC notified Steere and Geraghty that it was disaffirming their employment, trust and/or severance agreements. On August 28, 1991, Citytrust Bancorp Inc. terminated Steere's employment.

Both Steere and Geraghty have filed claims to their respective trusts funds with both the FDIC and Westport Bank & Trust. Similarly, the FDIC made Westport Bank & Trust aware of its claim to the trust funds. On November 14, 1991, Westport Bank & Trust filed the instant interpleader action pursuant to Fed.R.Civ.P. 22, seeking resolution of the conflicting claims concerning the aforementioned trust funds.

## Discussion

 Shorn of extraneous factual disputes and legal arguments, the salient question presented in the action is: Whether the benefits which Steere and Geraghty seek to recover may be properly disaffirmed by the FDIC pursuant to 12 U.S.C. § 1828(k). Under 12 U.S.C. § 1828(k)(1), the FDIC "may prohibit or limit, by regulation or order, any golden parachute payment or indemnification payment." For purposes of § 1828(k),

[t]he term "golden parachute payment" means any payment (or any agreement to make any payment) in the nature of compensation by any insured depository institution or depository institution holding company for the benefit of any institution-affiliated party pursuant to an obligation of such institution or holding company that—(i) is contingent on the termination of such party's affiliation with the institution or holding company and—(ii) is received on or after the date on which—(I) the insured depository institution or depository institution holding company, or any insured depository institution subsidiary of such holding company, is insolvent; [or] (II) any conservator or receiver is appointed for such institution. . . .

12 U.S.C. § 1828(k)(4)(A).

Notwithstanding their designations as "trusts," the benefits to which Geraghty and Steere claim entitlement are "golden parachute payments" within the meaning of § 1828(k). Under the agreements between

Geraghty and Steere and Citytrust, the compensation was not to be paid until their termination of employment. Here, Geraghty's employment was terminated as a matter of law on the date Citytrust was declared insolvent and a receiver was appointed. *Freeman v. FDIC,* Civil No. 3:93CV400(TFGD), Recommended Ruling on Motion to Dismiss, slip op. at 5 (D.Conn. January 21, 1994). Steere's employment was terminated several weeks after the appointment of the receiver. Accordingly, under § 1828(k), the FDIC could properly disallow their claims to the trust res.

This result is consistent with the conclusions to which other courts have come when construing the FDIC's authority under 12 U.S.C. § 1821(e). Section 1821(e) authorizes the FDIC to disaffirm or repudiate contracts which are burdensome and which may hinder the orderly administration of the institution's affairs. Under § 1821(e)(3)(A)(i), a claimant whose contract is repudiated is entitled only to "actual direct compensatory damages" as determined on the date of the appointment of the receiver. Courts have found that damages resulting from the repudiation of a severance package are not "actual direct compensatory damages" within the meaning of § 1821 because they are analogous to liquidated damages. *See Howell v. FDIC,* 986 F.2d 569, 573 (1st Cir.1993).

Moreover, as this Court recently noted in *Freeman v. FDIC,* slip op. at 6, the discretion afforded the FDIC under § 1828(k) comports with established principles of federal common law and case law in the it permits the FDIC to disaffirm contracts to pay benefits which had not become fixed and certain before the date the institution was declared insolvent and placed in receivership. As of the date of Citytrust's insolvency, the claimant's benefits under their employment agreements had not become vested in that the payment of the trust funds were contingent upon prior termination of their employment. "The triggering event for [their] eligibility for benefits, the termination of [their] employment, did not precede the Banking Commissioner's declaration of insolvency and appointment of the FDIC as receiver. Under similar circumstances, courts have held that such claims cannot be maintained if plaintiffs were still employed by a financial institution at the time it was put into federal receivership." *Freeman v. FDIC,* slip op. at 6–7 (citations and quotations omitted); *see Fresca v. FDIC,* 818 F.Supp. 664 (S.D.N.Y.1993) (Plaintiff's entitlement to medical and life insurance vested where plaintiff retired prior to insolvency.); *Office and Professional Employees International Union, Local 2 v. FDIC,* 813 F.Supp. 39, 45 (D.D.C.1993) ("Because the Bank did not obligate itself to give severance pay until it terminated the employees, and because the termination did not occur until after the appointment, the Plaintiffs cannot show that the severance pay claims existed before the bank's insolvency and did not depend on any new contractual obligation arising later.") (quotation and citation omitted); *but see LaMagna v. FDIC,* 828 F.Supp. 1, 3 (D.D.C.1993) (FDIC conceded facts suggesting the plaintiff had not received a "golden parachute" deal.)

The Supreme Court's recent decision in *O'Melveny & Myers v. FDIC,* — U.S. —, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994) does not compel a different conclusion. In *O'Melveny,* the issue before the Court was "whether, in a suit by the Federal Deposit Insurance Corporation as receiver of a federally insured bank, it is federal-law or rather a state-law rule of decision that governs the tort liability of attorneys who provided services to the bank." *Id.* at —, 114 S.Ct. at 2051. The Supreme Court held that, since there is no federal general common law, California law governs the question of attorneys' tort liability.

By analogy, Geraghty and Steere suggest that, under state law, the FDIC may not revoke their entitlement to severance benefits. However, the *O'Melveny* Court noted:

In answering the central question of displacement of California law, we of course would not contradict an explicit federal statutory provision. Nor would we adopt a court-made rule to supplement federal statutory regulation that is comprehensive and detailed; matters left unaddressed in such a scheme are presumably left subject to the disposition provided by state law.

It is hard to avoid the conclusion that § 1821(d)(2)(A)(i) places the FDIC in the shoes of the insolvent S & L, to work out its claims under state law, except where some provision in the extensive framework of FIRREA provides otherwise.

*Id.*

Here, § 1828(k) is an explicit federal statutory provision which defines "golden parachutes" and authorizes the FDIC to disaffirm them. Accordingly, under the rationale set forth in *O'Melveny,* the FDIC may disaffirm severance packages such as the ones which are the subject of this suit.

■ Finally, the Court must reject Steere's and Geraghty's argument that the FDIC, in its capacity as receiver of Citytrust, is estopped from disaffirming Citytrust's obligations under the employment and trust agreements because the FDIC, in its corporate capacity, assented to execution of the employment agreements. "[T]he wrongful conduct attributed to the FDIC as corporation cannot be attributed to the FDIC as receiver." *FDIC v. Bernstein,* 944 F.2d 101, 106 (2d Cir.1991). Accordingly, any equitable claims based upon the FDIC's regulatory conduct cannot form the basis of recovery of the trust funds at issue in this case. *See Howell v. FDIC,* 986 F.2d at 575.

### Conclusion

The FDIC's Motions for Summary Judgment (# 46, 51) are GRANTED. Defendant–Claimant Norman M. Steere's Motion for Summary Judgment (# 60) is DENIED. Defendant–Claimant M. James Geraghty's Motion for Summary judgment (# 65) is DENIED.

Any objections to this report and recommendation must be filed with the Clerk of Courts within ten (10) days of the receipt of this recommended ruling. Failure to object to this report and recommendation within ten (10) days will preclude appellate review. *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 2 of the Local Rules for United States Magistrates; *Small v. Secretary of HHS,* 892 F.2d 15, 16 (2d Cir.1989).

Dated at Hartford, Connecticut, this 24th day of June, 1994.